43   123
132   97

43   123
146   295

43   123
173   383

43   123
91a  1167

43   123
e204  1452

STEPHEN W. MILES *et al.*

*v.*

MARY J. WHEELER *et al.*

1. ADMINISTRATORS — *cannot purchase at their own sale.* The purchase of real estate belonging to the deceased by an administrator, through the interposition of a third party, at his own sale, is fraudulent *per se;* and it matters not that the sale was at public auction for a fair price, and made through the medium of a third party as the bidder, and to whom the administrator conveys.

2. The law forbids administrators, executors, and others sustaining a fiduciary and confidential relation, from dealing on their own account with the thing or person falling within that trust or relationship. It avails nothing to show that the intentions of the administrator were honest, and that there was no fraud in fact. The law shields him from all temptation by the inflexible rule that he cannot buy at his own sale.

3. The reason of the rule is, that the interests of the buyer and seller of the same property are necessarily antagonistic, and the only safe rule is one which absolutely forbids a trustee to occupy two positions inconsistent with each other.

4. LIMITATION — *how far applicable to trusts.* While statutes of limitation do not strictly apply to trusts, yet, in cases of constructive, as distinct from express trusts, courts of equity will sometimes adopt the analogies of the statute, and refuse relief after an unreasonable and unexplained lapse of time. But the courts have never sought to lay down a precise rule. Each case is to be adjudged in this regard upon its particular circumstances.

5. SAME — *where acquiescence is relied upon.* Where, in case of a trustee purchasing at his own sale, the defendant relies upon acquiescence, the burden is upon him of showing notice to the *cestui que trust*, distinct information to him, and acquiescence after that distinct information is communicated.

6. This rule is upon the ground, that, the purchase being *prima facie* a fraud and void, it devolves upon the person claiming under it to show whatever he relies upon as taking it out of the rule.

7. SAME — *the time from which acquiescence is to be computed.* Acquiescence is only to be computed from the period when the injured party acquired, or ought, in the ordinary course of affairs, to have acquired, a knowledge of the fraud.

8. STATEMENT OF ACCOUNT — *rents and profits, from what time allowed.* The general rule upon the question, as to the time from which rents and profits are allowed, is, that, where there has been great *laches* on the part of the complainant, and the defendant has not been guilty of positive fraud, the account will only be taken from the commencement of the suit; but where the complainants are infants, and there has been no *laches* in filing the bill, or the defendant is charged with fraud, the account will be carried back to the time when the fraudulent possession began. There is, however, no fixed rule upon this question. Each case depends upon its own circumstances.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. SILAS L. BRYAN, Judge, presiding.

This was a suit in chancery, instituted in the court below by the defendants in error, the heirs at law of Amasa Wheeler, deceased, against the plaintiffs in error. The bill was filed for the purpose of setting aside a sale of land made by the administrator for the payment of debts, under an order of court; and an account of the rents and profits. Upon the hearing of the case in the Circuit Court a decree was rendered, setting aside the sale, requiring the defendants to make a deed, etc. The defendants to the bill brought the case to this court by writ of error.

The facts are sufficiently stated in the opinion.

Messrs. H. K. S. O'Melveny and Wm. R. Morrison, for the plaintiffs in error.

Messrs. Wm. H. Underwood and W. H. Barnum, for the defendants in error.

Mr. Justice Lawrence delivered the opinion of the Court:

This was a bill in chancery, filed in April, 1861, by the heirs of Amasa Wheeler, for the purpose of setting aside a sale of land made by his administrator for the payment of debts, under an order of court. The facts material to the present case are as follows :

Amasa Wheeler, the father of the complainants below, defendants in error here, died in 1839, and Stephen W. Miles, senior, was appointed his administrator. In 1842 the latter obtained an order from the Circuit Court of Monroe county for the sale of the land of the deceased, and in August of the same year sold the premises now in controversy, and was himself the purchaser. In May, 1844, he obtained another order for the sale of the same land, and in July, 1844, professed to sell it to one Alexander, and so reported to the court. He made no deed to Alexander, however, until the 13th of September, 1845, when he conveyed to him, and on the same day Alexander reconveyed to Miles. Alexander never exercised any acts of ownership over the land, but, on the contrary, Miles took possession in 1840 or 1841, and kept possession up to the date of his own death in 1859, and always claimed it as his own. By his last will he devised the land to his son, Alonzo N. Miles, upon certain conditions, on his failure to perform which it was given to his elder son, Stephen W. Miles, junior, who in the mean while was to hold it as trustee for Alonzo. This bill is brought against them by the heirs of Wheeler to procure a reconveyance and an account of the rents and profits.

There is really no room for controversy as to the main question. It is perfectly manifest, from the facts stated above, that the name of Alexander was used merely as a means of passing the title of the land to Miles; that the sale to Alexander was

simply colorable; and that the transaction was really a pur-
chase by an administrator at his own sale. This the law for-
bids. *Thorp* v. *McCullom et al.*, 1 Gilm. 614; *Dennis* v.
*McCagg*, 32 Ill. 444; *Michaud* v. *Girard*, 4 How. 553. In this
last case the Supreme Court of the United States gave this
question a very searching examination, reviewing the author-
ities both in the common and civil law. In that case an
executor, as in this an administrator, became the purchaser,
through the interposition of a third person, of real estate
belonging to the deceased, and sold at public sale. The court
laid down the salutary rule that this is fraudulent *per se*, and
that it matters not that the sale was at a public auction, for a
fair price, and made through the medium of a third person as
the bidder, and to whom the executor or administrator conveys.
It avails nothing to show that the intentions of the trustee
were honest, and that there was no fraud in fact. It is one of
those cases in which the law will not permit a trustee to palter
with his own conscience. It shields him from all temptation
by the inflexible rule that he cannot buy. The plain and suf-
ficient reason is that the interests of the buyer and seller of the
same property are necessarily antagonistic, and the only safe
rule is one which absolutely forbids a trustee to occupy two
positions inconsistent with each other. A leading case in this
country on this subject is *Davone* v. *Fanning*, 2 Johns. Ch. 252,
in which the authorities are very fully considered by Chancellor
Kent, and the rule is applied with great strictness.

It is however insisted by the counsel for plaintiffs in error
that the right to relief in the present case is lost by lapse of
time. While statutes of limitation do not strictly apply to
trusts, yet in cases of constructive, as distinct from express,
trusts, courts of equity will sometimes adopt the analogies of
the statute and refuse relief after an unreasonable and unex-
plained lapse of time. But the courts have never sought to
lay down a precise rule. Each case is to be adjudged in this
regard upon its particular circumstances. In Hill on Trustees,
168, it is said: "But mere length of time will not, of itself,
be a bar to relief on a constructive trust originating in fraud.

The party entitled to the benefit of such a trust must also be aware of his rights and acquiesce in being deprived of them; and time, in order to bar the remedy, will not begin to run until he acquires, or might have acquired, the knowledge of the fact on which the trust is founded." On the next page, the author adds: "It is difficult to lay down as a general proposition, what length of acquiescence will be a bar to relief on the ground of fraud. This must necessarily be a matter of equitable discretion, depending on the nature of the transaction and the circumstances of the parties in each individual case. The legal bar of twenty years appears to have been treated as the proper limit on several occasions; and it was distinctly decided in one case, that equity will not relieve where the facts constituting the fraud are in the knowledge of the party and he lies by for twenty-five years, and in another case twenty-one years' acquiescence was held to be a bar." On page 265, the author recurs to this subject, and quotes various cases showing that while in some instances relief has been refused after the expiration of eighteen years, on the ground of acquiescence, in others it has been allowed after the lapse of fifty years. On page 266, he says: "it is almost needless to add that a *cestui que trust* being an infant, or otherwise *non sui juris,* cannot be prejudiced by any acquiescence," referring to the case of *March v. Russell,* 3 M. & Craig, 31. It clearly cannot be claimed, that, where the injured party has been, during a portion of the time, an infant, this period is to be reckoned a part of the period of acquiescence.

In the case before us the administrator's sale took place in 1844. The age of the three children is not given in the record with accuracy, but the oldest must have been, at that time, about twelve, and the other two were still younger. They were taken to Pennsylvania while infants, by their uncle, and have since resided there. This bill was filed in 1861, at which time the youngest could not have been more than twenty-four or five years of age, and the oldest probably about thirty. There is no evidence in the record, showing when the knowledge of the fraud first came to them, and in view of their age,

sex, and distant locality, we cannot presume knowledge. In *Randall* v. *Irvington*, 10 Ves. 427, the court held, where in cases of this character the defendant relies upon acquiescence, the burden is upon him of "showing notice to the *cestui que trust*, distinct information to him, and acquiescence after that distinct information communicated." This is upon the ground, that the purchase being *prima facie* a fraud and void, it devolves upon the person claiming under it to show whatever he relies upon as taking it out of the rule. No proof of that kind has been made in the present case, and there is nothing upon which to found a presumption of acquiescence. The complainants were taken, while yet young girls, to a distant State, where they have since resided. They cannot be presumed to have known how their father's estate was settled many years before. To hold them barred by lapse of time, under such circumstances, would be to apply a far more rigid rule than is justified by any of the authorities cited by counsel, or which we have met in our examination of the case. Without deciding to which of our statutes of limitation, in reference to real estate, a court of equity should resort for analogies on the mere question of time, it is sufficient, in the present case, to say, that the time is only to be computed from the period when the injured party acquired, or ought, in the ordinary course of affairs, to have acquired a knowledge of the fraud. Then, only, does acquiescence begin. This is the language of all the cases, many of which are quoted in Hill on Trustees *ubi supra*, and also on page 527, in the notes. We have no evidence when this knowledge was acquired in this case, except by the filing of the bill. We cannot, therefore, hold the complainants barred.

By agreement, both parties have assigned errors as to the mode in which the account is stated. The court, by its master, took an account of rents and profits from the date of sale, and, after allowing the defendants for the money paid at the administrator's sale and interest, as also for taxes, repairs and an annual compensation of twenty-five dollars for taking charge of the farm, decreed the difference in favor of the complain-

ants, amounting to $1,600, to be paid by the estate of Miles. The appellants insist, the rents and profits should be allowed only from the commencement of the suit. There is no fixed rule upon this question. Each case depends upon its own circumstances, as in reference to what length of time shall bar relief. The general rule to be gathered from the cases is, that, where there has been great *laches* on the part of the complainant, and the defendant has not been guilty of positive fraud, the account will only be taken from the commencement of the suit. But where the complainants are infants and there has been no *laches* in bringing the bill, or the defendant is chargeable with fraud, the account will be carried back to the time when the fraudulent possession began. *Bowes* v. *East London Water Works,* 3 Mad. 375; *Drummond* v. *The Duke of St. Albans,* 5 Ves. 432; *Pettinard* v. *Prescott,* 7 id. 541; *Dormer* v. *Fortescue,* 3 Atk. 130. In the last cited case Lord HARDWICKE said: "so in the case of a bill brought by an infant to have possession of the estate, and an account of rents and profits, the court will decree an account from the time the infant's title accrued, for every person who enters on the estate of an infant, enters as a guardian or bailiff for the infant." In the case before us, the administrator, Miles, entered on the estate of the infants and continued in possession of the rents and profits until his death in 1859. Since then the defendants, his devisees, have been in possession, and as the bill was filed in 1861, it is very clear the account should be carried back to the administrator's purchase.

But the court erred in decreeing the payment of the entire sum of $1,600, by the estate of Stephen W. Miles. There are various persons interested as devisees or legatees in the estate, while only the defendants, Alonzo N. Miles and Stephen W. Miles, Jr., are interested in this land. Since the death in 1859, of the elder Stephen W. Miles, the rents and profits have been received by Stephen W. Miles, Jr., either in his own right or for the benefit of Alonzo N. Miles, and not for the estate. These rents and profits, which have accrued since the death of Miles, should, therefore, be charged against them, and

9 — 43D ILL.

decreed to be refunded by them and not by the estate. In this respect there was error in the decree.

The defendants in error have assigned, as a cross error, that the court allowed defendants twenty-five dollars per annum compensation, for collecting rents, paying taxes and taking charge of the farm. The complainants would have been obliged to pay as large a sum as this for like services to any other person, and as Miles may have bought at the sale, without an actual intent to commit a fraud, and as the account, in other respects, is liberally stated for the complainants, and carried back for a long time, we are not inclined to direct this item to be stricken out. It is also objected, that the court allowed the defendants compound interest on the taxes, but, if so, the record does not show it.

The decree of the court below must be modified in the manner above indicated, and for this purpose the cause must be remanded. Inasmuch, however, as this modification does not go to the essential merits of the decree, and would probably have been made by the court below, if its attention had been called to the matter, we shall direct that each party pay his own costs in this court.

*Remanded to modify decree.*