BLANDINA M. ELTING *et al.*

*v.*

THE FIRST NATIONAL BANK OF BIGGSVILLE *et al.*

*Opinion filed June 18, 1898.*

1. EQUITY—*jurisdiction of equity in settlement of estates.* Equity will take jurisdiction of the settlement of an estate to afford relief to a creditor whose claim has been duly presented and allowed in the county court, where some satisfactory reason exists why the county court cannot grant him the requisite relief.

2. SAME—*gross mismanagement and breach of trust by executrix are grounds for equitable interference.* Gross mismanagement of an estate by the executrix, both as to real and personal property, and a breach of trust as to the sale of the real estate, are grounds for equitable interference at the instance of creditors whose rights have been prejudiced by such misconduct.

3. SAME—*creditors may maintain a bill to set aside a sale to executrix.* The purchase, by an executrix, of real estate belonging to her intestate, at her own sale thereof, is fraudulent *per se,* and creditors whose claims against the estate have been duly allowed may file a bill in equity to set aside the sale.

4. EXECUTORS AND ADMINISTRATORS—*constructive trust attaches to profits made by executor.* An executor who obtains title to his intestate's real estate by purchasing at his own sale, holds the title in trust for creditors whose claims have been duly allowed, which trust attaches to the proceeds and profits arising from a re-sale by such executor to *bona fide* purchasers.

5. SAME—*foreign courts have no jurisdiction over an executor acting in Illinois alone.* A judgment rendered in a foreign State against an executor appointed and acting in Illinois alone is of no force in Illinois, and courts of this State cannot allow such judgment as a claim against the estate upon the filing of a transcript, as such a judgment is not even *prima facie* evidence of indebtedness.

6. JUDGMENTS AND DECREES—*equity may set aside a collusive judgment rendered by county court.* A judgment rendered by the county court against an estate through the fraud and collusion of the executrix and the party holding the alleged claim in the form of a void judgment of a foreign State, may be set aside in equity at the instance of third parties whose rights are prejudiced thereby.

7. LACHES—*defense of laches must be made by the pleadings.* One who fails to raise the question of *laches* by demurrer, plea or answer is estopped to raise the question for the first time in a court of review.

*Elting v. First Nat. Bank,* 68 Ill. App, 204, affirmed.

WRIT OF ERROR to the Appellate Court for the Second
District;—heard in that court on writ of error to the Cir-
cuit Court of Henderson county; the Hon. JOHN J. GLENN,
Judge, presiding.

The original bill in this case was filed in the circuit
court of Henderson county on December 28, 1892.   The
complainants in the bill were the First National Bank
of Biggsville, Charles W. Johnson and others, creditors,
who had proven up their claims against the estate of
Cornelius D. Elting, deceased.   The defendants to the
bill were Blandina M. Elting, as executrix of the last
will and testament of Cornelius D. Elting, deceased, and
personally;  Philip B. Elting, as executor of Anna Maria
Elting, deceased, and personally;  Lewis B. Elting, Wil-
liam L. Cuddeback, William Caldwell, George H. Lathrop,
Lemuel Waggy, Charles Nelson, Mary S. Caldwell, Emma
Riggs, and Caroline Dice.   The bill, as originally filed and
as subsequently amended, attacks the sale of real estate
belonging to the estate of Cornelius D. Elting, deceased,
made by the said executrix and certain purchases made
at said sale and re-sales of land so purchased, as being
fraudulent;  and also attacks, as fraudulent and void, the
allowance of a certain claim of Philip B. Elting, execu-
tor of Anna M. Elting, deceased, against the estate of
said Cornelius D. Elting, deceased.   The bill prays, that
said sales and purchases be held fraudulent, that Blan-
dina M. Elting and Philip B. Elting be required to ac-
count for all profits made by them through a re-sale of
the lands so purchased, including rents; that the claim
of Philip B. Elting, executor, so allowed as aforesaid,
be set aside and annulled; that judgment be rendered
against the sureties on the bond of said executrix; that
Mary S. Caldwell, Emma Riggs and Caroline Dice be re-
quired to pay over whatever was due from them, upon the
purchase of portions of said real estate, for the benefit
of the creditors; that said Blandina and Philip be re-

173—24

quired to account for the crops raised on said lands, and for their actings and doings with the property of said Cornelius D. Elting; that the accounts of the executrix be corrected, and a reference be made for that purpose; that a receiver be appointed to collect the assets, and that such other relief be granted as to the court shall seem meet. All the defendants answered the bill except Nelson, Lathrop, Waggy, Dice and Lewis B. Elting; and against the latter named defendants, not answering, default was entered. A decree was rendered by the circuit court substantially in accordance with the prayer of the bill. That decree has been affirmed by the Appellate Court, and the present writ of error has been sued out for the purpose of reviewing such judgment of affirmance.

The facts in this case are substantially as follows: About fifteen years before March 18, 1885, Cornelius D. Elting came to Henderson county, Illinois, from the State of New York, and resided there up to the time of his death. On March 29, 1885, he died, leaving neither widow nor children, but leaving a sister, and brothers, and nephews, living in the State of New York. He left a will, in which, after providing for the payment of his debts, he devised the remainder of his estate, both real and personal, to his sister, Blandina M. Elting. The said Blandina M. Elting was nominated as executrix, and a nephew, named William L. Cuddeback, was nominated as executor, in the will. Both of the executors at that time lived in the State of New York. William L. Cuddeback refused to serve. The will was admitted to probate in the county court of Henderson county on April 25, 1885, and Blandina M. Elting, who had come from New York to the State of Illinois, as soon as her brother died, was appointed and qualified as executrix of his estate. The letters testamentary issued to her were dated April 29, 1885. She filed a bond as executrix in the sum of $2000.00, with said William Caldwell, George H. Lathrop and Lemuel Waggy, as sureties thereon. Her brother, Philip B. Elt-

ing, came out from New York with her.   She went back
to New York after remaining in Illinois about eight
months, and never returned to Illinois, except to make
the sale hereinafter mentioned, and to give her testimony
upon the hearing of this cause.   By power of attorney,
dated April 22, 1885, she appointed her brother, Philip,
her attorney to collect and receive all money due her as
executrix of said estate, and in her name to receipt for
the same, and in general to attend to all matters, per-
taining to the settlement of the said estate, as fully as
she could do herself, except as to conveyances of the
real estate of the said estate.   This power of attorney
was filed for record in Henderson county April 29, 1885.
On December 20, 1892, on motion of one of the creditors,
the county court of Henderson county made an order re-
quiring Blandina M. Elting to file an additional bond, as
executrix, in the sum of $5000.00 within twenty days, but
this order was never complied with.

At the time of his death, Cornelius D. Elting owned
a large amount of live stock, grain and other personal
property in Illinois of the value of more than $10,000.00,
upon a part of which was a chattel mortgage of $7000.00.
The said Blandina took charge of said personal prop-
erty, including horses, cattle, hogs, grain, hay, household
goods, farming utensils, housekeeping supplies, etc.; and
she and her brother, Philip, used the same in farming the
lands, owned by the deceased in Henderson county, for
more than a year, and fed the horses out of the grain
and hay belonging to the estate, and used the products
of the farm for the personal benefit of said Blandina.   She
sold part of the personal property at private sale, and
never accounted for the proceeds of the sale, or for the
use of the property.

At the time of his decease Cornelius D. Elting was the
owner seized in fee of about 820 acres of land in Illinois,
of which about 740 acres were situated in Henderson
county, and 80 acres in Warren county.   He also owned

some land in the village of Sciota in McDonough county, and a section of land in Kossuth county, Iowa. The Iowa land was encumbered by a mortgage for $3000.00 upon the face of it, but upon which only about $1200.00 was due at the time of his death. The most of the Illinois lands were encumbered with mortgages to the amount of $25,000.00 nominally, but upon which only about $20,000.00 remained unpaid.

The day fixed for the adjustment of claims against the estate was July 20, 1885. On that day claims were allowed against the estate to the amount of about $10,-000.00. September 20, 1886, another claim was allowed of $205.90. Of the claims thus allowed about $8414.55 belong to the seventh class of claims; $1384.06 belong to the sixth class of claims; $202.00 to the first class, and $44.60 to the fifth class.

In 1869, Anna Maria Elting, mother of Cornelius, Blandina and Philip Elting, died testate in Orange county, New York, naming her son, Cornelius D. Elting, as her executor. Her will was admitted to probate in Orange county, New York, and Cornelius D. Elting qualified as executor on April 6, 1869. The decree of the court below finds that, before his death on March 29, 1885, he had collected all the assets of his mother's estate. After the return of Blandina to New York from Illinois, Philip, while in Illinois, procured himself to be appointed executor of the estate of his mother Anna Maria Elting by the surrogate court of Orange county, New York. At the time when Philip was thus appointed in New York executor of his mother's estate, he was acting in Illinois as the agent of his sister Blandina in the settlement of the estate of his deceased brother, Cornelius. On December 27, 1886, Philip, as executor of his mother, procured a citation from the surrogate court of Orange county, New York, directed to Blandina as executrix of the estate of Cornelius, requiring her as such executrix to account. Blandina appeared in said surrogate court and

filed an appearance, and acknowledged an indebtedness; and, thereupon, the said surrogate court entered up judgment against the said Blandina, executrix of the estate of Cornelius, in favor of Philip B. Elting, as executor of the will of Anna M. Elting, deceased, for the sum of $6174.21. Blandina never took out letters of administration in the State of New York on the estate of her deceased brother, Cornelius, and received no property belonging to him in New York, and had no other authority to act as executrix of his estate than the letters issued to her in Illinois. Philip procured a transcript of said New York judgment, and filed the same in the county court of Henderson county on January 26, 1887, more than eighteen months after the day fixed for the adjustment of claims against the estate. It is conceded by both sides, that Blandina M. Elting was interested in said judgment as one of the devisees under the will of her mother. Certain attorneys in Henderson county entered the appearance of Blandina M. Elting, who was absent and residing in New York, in the county court of Henderson county to the claim of Philip B. Elting, executor of Anna M. Elting. These attorneys were at that time not only the attorneys of Blandina, executrix of the estate of Cornelius, but they were also attorneys for Philip, executor, plaintiff in the New York judgment. Blandina made no defense to the claim, and on April 6, 1887, it was allowed by the county court for $6174.21. Affidavit as to the correctness of this claim was made by Philip B. Elting on January 21, 1887. Service of process upon Blandina as executrix was waived by the attorneys aforesaid, who entered her appearance. No claim in favor of Philip, as executor of his mother's estate, was made out and filed in the county court of Henderson county, other than the mere filing of the transcript of the New York judgment aforesaid.

On March 7, 1887, a petition was filed by Blandina, as executrix of the estate of Cornelius, through the at-

torneys already referred to, in said county court, for the
sale of the Illinois lands of the deceased Cornelius to
pay debts.   The petition was signed by Blandina execu-
trix, by the attorneys aforesaid, as her solicitors, and
was sworn to by said Philip.   No summons was issued.
There were several tenants upon the lands, but none of
them were made parties defendant to the petition.   On
March 21, 1887, Philip, as attorney in fact, entered the
appearance of his sister, Blandina, as executrix, and on
that day decree of sale was entered for the sale of the
lands in accordance with the prayer of the petition.   The
decree, so entered, recites among other things the filing
of the petition, and the entry of the appearance of Blan-
dina by her attorney in fact, Philip B. Elting.

On April 15, 1887, Blandina M. Elting, who had re-
turned to Illinois, made sale of the real estate under the
decree, so entered on March 21, 1887.   At the sale her
brother, Philip B. Elting, bid off, of the land sold, two
full quarter sections, two 80-acre tracts, one 20-acre tract
and one town lot in Raritan, amounting, exclusive of the
lot, to 500 acres.   Eighty acres of the land so sold, being
the undivided one-half of the south-east quarter of a cer-
tain section 36, were bid off by N. O. Tate and Charles
Torrence for $350.00.   Three 80-acre tracts, including the
80 acres in Warren county, were not sold.   The total
amount of bids for the 580 acres and the Raritan lot,
which were sold, was $3131.50.   Philip sold the Raritan
lot to one Barnes for a small advance.   On January 4,
1888, Philip B. Elting conveyed to his sister, Blandina
M. Elting, all the lands, which she had thus struck off
to him at her sale, as executrix, except the Raritan lot,
amounting altogether to 500 acres.   The other undivided
half of the south-east quarter of section 36 was owned
by a man named Tubbs, who on November 28, 1887, con-
veyed the same to Tate and Torrence, and on December
9, 1887, Tate and Torrence conveyed the whole quarter
section to Philip B. Elting.   The money, used to pur-

chase the title from Tubbs and Tate and Torrence, consisted of funds belonging to the estate of Cornelius D. Elting. Blandina and Philip received the rents and profits of said real estate conveyed to Philip by Blandina, for the year 1887. The whole of the south-east quarter of section 36 conveyed by Tate and Torrence to Philip was on January 4, 1888, conveyed by him to his sister, Blandina.

On December 4, 1889, Blandina conveyed to Mary S. Caldwell, the wife of said William Caldwell, 160 acres of the land so conveyed to her by Philip, for $8000.00, and on September 28, 1889, another 160 acres thereof to said Mary S. Caldwell for $6650.00. On November 25, 1889, Blandina conveyed the south-east quarter of section 36 to Emma Riggs for $6800.00; she also conveyed another 80 acres, transferred to her by her brother, to one Cornell for $2240.00; and received all the rents of said lands for the years 1888 and 1889. Emma Riggs gave a mortgage to Blandina to secure $5800.00 of the purchase money. The note securing this mortgage was assigned to William or C. E. Cuddeback, a nephew of Blandina, living in New York.

On May 25, 1885, Blandina executed a mortgage upon 400 acres of the land belonging to the estate, to her sureties, Waggy, Caldwell and Lathrop, to secure them as sureties on her bond, as executrix. When the 320 acres, above named, were purchased by Mary S. Caldwell, an agreement was made, by which Mrs. Caldwell was to keep back $2000.00 of the purchase money, until her husband's liability upon the bond of the executrix should be discharged. This agreement was transferred or assigned to William or C. E. Cuddeback, a nephew of Blandina, living in New York. The said sum of $2000.00 is still due from Mrs. Caldwell. On July 8, 1887, Philip sold to a railroad company the right of way over the 20-acre tract, purchased by him at the sale by the executrix, for $360.00. He and Blandina in November and December, 1887, con-

veyed 80 acres of the land for $2600.00 to one Nelson. On November 15, 1892, Blandina conveyed to one Parrish said 20-acre tract, except the right of way for $500.00. The 80 acres owned by the deceased testator, which were located in Warren county, were sold under a foreclosure decree rendered in favor of one Tubbs on April 10, 1886, and bid in by Tubbs. Upon the claim of $6174.21, allowed in the county court in favor of Philip B. Elting, as executor of his mother's estate, Philip caused execution to be issued, directed to the sheriff of Warren county, and redeemed from the sale under the foreclosure decree in favor of Tubbs the 80 acres so sold to Tubbs. The same were sold and bid in by Philip B. Elting, as executor of the estate of Anna M. Elting, for the redemption of the same, and a deed issued to him on April 20, 1887. On September 20, 1887, the land was sold by Philip to one Foote for $2800.00.

Cornelius D. Elting had been in partnership with one Douglas, at Sciota, Illinois, in the elevator and grain business. Philip acting for the executrix procured Douglas, the surviving partner, to sell the half interest in the business owned by the deceased to one N. O. Tate. Tate gave in exchange for this interest 80 acres of land in Fulton county, conveying said 80 acres to Blandina M. Elting by deed dated January 24, 1887. Blandina charged herself with $400.00 received from Douglas in settlement of the partnership. By quit-claim deed, dated March 30, 1889, she conveyed the land to one Rector for $1700.00.

The deceased, Cornelius, in his lifetime, had given a mortgage for $3000.00 upon the land in Iowa to one Moir. The mortgage was given to secure a loan of $3000.00, but, prior to the death of Cornelius Elting, Moir had only paid to him $1200.00 of the loan, leaving $1800.00 thereof in the hands of Moir, which had never been paid to the deceased. The executrix did not account for this sum of $1800.00 in her reports to the county court, but used it for her own benefit by crediting it upon certain indebtedness.

Blandina and Philip Elting caused administration to be taken out upon the estate of Cornelius D. Elting in Kossuth county, Iowa. Claims were filed against the estate in Iowa in favor of Blandina, and of Philip, as executor of his mother's estate, and of Cuddeback, and were allowed to the amount of $14,465.79. The land in Iowa was sold by the administrator there on October 22, 1892, and bid off by Philip for $12,480.00 in cash, and the sale was approved and deed ordered to be made.

The executrix, Blandina M. Elting, filed a report in the county court of Henderson county, as executrix, on June 21, 1886, and another report on July 19, 1892. No other reports than these were filed by her.

The decree rendered by the court below finds, that the executrix did not charge herself with certain portions of the personal property which came into her hands, or account for the same; that she charged to the estate certain moneys paid out by her, which were improperly so charged, because paid out for her own benefit, and not for the benefit of the estate; that she should be charged with the sum of $1800.00 in the hands of the said Moir, and not paid over by him to the deceased in his lifetime upon the Iowa mortgage; that her reports filed in the county court, are not correct in certain respects; that the report of July 19, 1892, is incorrect as to receipts from sale of real estate; that the executrix should be charged with the amount made by her through the sale of the Fulton county land, over and above the amounts which she charges herself with in the reports; that the claim of Philip B. Elting, as the executor of Anna M. Elting, was procured through collusion between said Philip, as executor, and Blandina, as executrix; that the allowance of said claim by the county court out of said estate was without authority of law and void; that no bond was executed by the executrix, as required by the statute; before making the sale of the real estate for the payment of debts; that Philip bought the greater part of said real

estate for his sister, the executrix, and paid nothing for the same; and, after selling a small part thereof, conveyed the remainder to Blandina; that said Philip and Blandina are chargeable as trustees with all they made out of the profits and sale of said lands; that said Philip should account to the estate of Cornelius Elting for the profits made by him upon the sale of the Warren county land, redeemed by him from the sale under the Tubbs decree; that a claim allowed in favor of B. Warren for $192.72 was improperly allowed, as only one-half thereof was due from the estate; that the executrix declined to obey the order requiring her to give an additional bond, and that said order cannot be enforced against her on account of her absence from Illinois; that the complainants in the bill are creditors of the estate of said Cornelius; that their claims were allowed within the two years required by law, and that the same have not been paid; that all of the lands belonging to the estate have been sold, either by foreclosure of mortgages, or by the executrix, to Philip B. Elting, and by said Philip and Blandina, his grantee, to third parties; that all the personal property has been sold, except as herein stated, and all the assets realized from the sale thereof, and the value of that part used by her, including all realized by her from the sale of real estate, are not sufficient to pay the claims allowed against the estate, exclusive of that of Philip B. Elting, executor as aforesaid; that the $2000.00 of purchase money still due from Mary S. Caldwell, and the agreement for which is held by William L. Cuddeback of New York, belongs to the estate, and that the said Cuddeback had constructive notice of the equities of the creditors and of their right to enforce the payment of the same; that the note for $5800.00 due from Emma Riggs, and assigned to said Cuddeback, was taken by him with constructive notice that it was given for the purchase of the land of the estate, and that said Cuddeback has no right to the same as against complainants; and that the

note executed by Caroline Dice, and the mortgage securing the same, arose from a sale of a part of the lands belonging to the estate of said Cornelius, and bought by said Philip at said executrix's sale.

The decree found that said claim of Philip B. Elting as executor, against the estate of Cornelius D. Elting, should be, and was thereby set aside, annulled and for naught held; that said Blandina and Philip be held to account for all realized by them out of the sale of the lands hereinbefore mentioned, including said lands in Fulton and Warren counties; that the said Blandina be prohibited from collecting any assets of said estate, and that William Froleich be appointed receiver to collect from her moneys or property that she holds belonging to the estate, and to recover assets due from any other person, including that of all the defendants in this case; that Emma Riggs is prohibited from paying to said Blandina or Cuddeback the amount due from her on said note; that the said Blandina be required to pay over to the receiver $3812.39 shown by her reports to be in her hands. The decree then directs an account as to the matters and things hereinbefore referred to, and set up in the bill in this case.

KIRKPATRICK & ALEXANDER, for plaintiffs in error.

BASSETT & BASSETT, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed by the plaintiffs in error, that the court below had no jurisdiction to entertain the present bill. The objection to the jurisdiction rests upon the alleged ground, that the bill in this case, and the facts as shown, do not present a case for the interposition of a court of chancery. As the object of the bill is to compel an accounting from the executrix of an estate in regard

to her conduct in the administration of the estate, it is said that the county court was the proper tribunal to grant the relief here asked. It is true, that the county court, in the exercise of its probate jurisdiction, may grant equitable relief in many cases affecting the administration of estates, and may adjudicate most of the questions arising in the course of such administration. But it was long ago held in this State, that courts of equity have a paramount jurisdiction in cases of administration and settlement of estates. Courts of chancery may, in the exercise of their general jurisdiction, take upon themselves the administration of estates, and thus, in the case of a particular estate, supersede the jurisdiction of the probate court. Where they do this, they will take the whole administration into their hands. (*Grattan* v. *Grattan*, 18 Ill. 167; *Townsend* v. *Radcliffe*, 44 id. 446). The strict rule, thus laid down in the earlier cases, has been somewhat modified. The doctrine, as thus modified, is, that a court of equity will not exercise this jurisdiction and take upon itself the administration of an estate, except in extraordinary cases; but, where a claimant has exhibited his claim and had it allowed in the county court, then, if any special reasons that may be deemed sufficient, can be assigned, why the county court cannot afford the requisite relief, equity will assist such claimant. (*Freeland* v. *Dazey*, 25 Ill. 294; *Harris* v. *Douglas*, 64 id. 466; *Winslow* v. *Leland*, 128 id. 304). The facts shown by the record in this case, furnish sufficient reasons why the powers of the county court are inadequate to grant all the relief sought, and justify the interposition of a court of equity.

The plaintiff in error, Blandina M. Elting, was really a resident of the State of New York. She came to Illinois upon the death of her brother, and was appointed his executrix by the county court of Henderson county. But in a few months thereafter she returned to the State of New York where she continued to reside. It is in evi-

dence, that assets of the estate were forwarded to her or her relatives in the State of New York. The removal of an executor from the State of his appointment, leaving his *cestui que trust* and the trust estate behind him, will justify the interference of a court of equity by the appointment of a receiver on the application of the *cestui que trust*. His removal places him beyond the jurisdiction of the court and beyond the reach of its process, and amounts to an abandonment of his trust. (High on Receivers, secs. 712, 715, 724). It is true that, under the statute of this State, an executor, who removes beyond the limits of the State, can be required by the county court, upon proper notice being given to him, to make a settlement of his accounts, and, in case of his neglect or refusal to do so, may be removed from his office by said court. (Rev. Stat. chap. 3, sec. 31). In this case the plaintiff in error, Blandina M. Elting, may have been removed by the county court on account of her removal from the State of Illinois, but, inasmuch as she was beyond the reach of the process of the county court, the payment of money in her hands, belonging to the estate, could not be enforced by attachment for contempt. The amount of personal property belonging to the estate was something over $10,000.00, but the bond given by the executrix was only $2000.00, although the statute requires that such bond should be in double the value of the personal estate. When the decree was entered by the county court for the sale of the real estate by the executrix to pay debts, said executrix gave no further and additional bond as required by section 7 of the Administration act. After the sale was made, the executrix did not make report thereof to the next term of the court thereafter, as required by section 109 of the Administration act, but the report was made and confirmed before the next term of the court. The sale was made without giving the full notice required by said section 109.

The evidence shows gross mismanagement of the estate by the executrix, both in regard to the personal property and in regard to the sale of realty. When she removed from the State, she appointed her brother, Philip B. Elting, who was insolvent, to manage the estate in her behalf, and left him to deal with it as he saw fit. She and he used the property of the estate for their own benefit, rather than for the benefit of the estate. In her reports to the county court the executrix failed to charge herself with all the personal property received by her, and her reports were in other respects incorrect. She did not account therein for interest on notes collected, and did not account for some of the notes inventoried. Soon after her appointment she executed a mortgage upon 400 acres of land, belonging to the estate, to the sureties on her bond as executrix, to secure them as such sureties, but without any other consideration, thus seeking to place a charge upon the land, which operated to her benefit only, ahead of the charge to which the land was subject under the law for the payment of the debts of the testator. But, while not deciding that the matters and circumstances heretofore detailed would alone constitute a sufficient reason for invoking the interposition of a court of equity, we are yet of the opinion, that these and other evidences of neglect and mismanagement in the administration of the estate, when taken in connection with the more serious facts hereinafter stated, did furnish sufficient reason for filing the bill in the present case.

The strongest ground for the jurisdiction of equity in this case arises out of the breach of trust, of which the executrix was guilty, in the sale of the real estate belonging to the estate. On April 15, 1887, nearly two years after her appointment as executrix, she sold at a sale, made by her as executrix under a decree of the county court, 500 acres of land belonging to the estate, in tracts, varying all the way from 20 acres to 160 acres. These tracts of land, making 500 acres in all, were bid in

by, and struck off to, her brother and agent, Philip B. Elting. The testimony shows that Philip B. Elting paid nothing for the purchase of this property at the time of the sale, and that whatever he may have paid subsequently, or settled for subsequently, was either taken from the funds of the estate, or raised by mortgages which he executed upon the property of the estate. After these tracts of land were thus struck off to Philip B. Elting, and on January 4, 1888, he deeded the same to his sister, the plaintiff in error, Blandina M. Elting, executrix of the estate. So far as the evidence shows, there was no consideration for these transfers from Philip B. Elting to his sister, the executrix. Thereafter, at various times between January 4, 1888, and the latter part of 1892, Blandina sold and conveyed all, or nearly all, of the land deeded to her by her brother, Philip, to outside parties for large sums of money. Under this state of facts, no other conclusion can be arrived at, than that the executrix sold this property to herself, making her brother and agent the medium through which she secured the title.

It is well settled in this State, that an administrator or executor cannot purchase at his own sale. The purchase of real estate belonging to the deceased by an administrator or executor at his own sale, through the intervention of a third party, is fraudulent *per se.* A bill in equity will lie to set aside a sale of land made by an administrator or executor, where the latter has made the purchase for himself. (*Miles* v. *Wheeler*, 43 Ill. 123; *Kruse* v. *Steffens*, 47 id. 113; *McCreedy* v. *Mier*, 64 id. 495; *Whitlock* v. *McClusky*, 91 id. 582; *Lagger* v. *Mutual Union Loan Ass.* 146 id. 283).

It is said, however, by the plaintiffs in error, that, in all cases decided by this court, where a bill has been filed to set aside a sale by an administrator or executor to himself, such bill has been filed by the heirs only of the deceased, and not by the creditors. The present bill

is filed by creditors, whose claims against the estate of
the deceased Cornelius D. Elting had been allowed by
the county court of Henderson county. It is true, that,
in most of the cases referred to, this court has sustained
the right of the heir to file such a bill. But we are of the
opinion that in a case, where the circumstances are such
as appear in this record, creditors, who have reduced
their claims to judgment, can file a bill of this character.

Wherever a party, purporting to act in his fiduciary
character, deals with himself in his private and personal
character, without the knowledge of his beneficiary, as
when a trustee or agent to sell sells the property to
himself, the transaction will be set aside at the suit
of the beneficiary. The reason of the rule grows out of
the fiduciary relation which exists between the parties.
(2 Pomeroy's Eq. Jur. sec. 958). The statute authorizes
an administrator or executor to sell the real estate in
case of the deficiency of personal assets, in order to raise
money to pay the debts of the deceased. Necessarily
the administrator or executor in such case has a double
duty to perform. He owes a duty to the heirs to sell the
land fairly and for as much as possible, in order that
the surplus out of the proceeds of sale, after paying the
debts, shall be as large as possible, inasmuch as such sur-
plus goes to the heirs. But the administrator also owes
a duty to the creditors to make a fair sale, in order that
such sale, if possible, may realize enough to pay the debts
due such creditors. If, by reason of fraud or collusion
or other improper conduct, he sells the property to him-
self, or otherwise so conducts the sale that the creditors
fail to realize sufficient to pay their claims, he is guilty
of a violation of his trust, as well against the creditors,
as against the heirs. In such case the creditors are bene-
ficiaries in the trust. Accordingly, we find that the doc-
trine, which forbids a trustee to take advantage of his
fiduciary relation to work a wrong to his beneficiary, ap-
plies to executors and administrators, as well as to other

trustees. "The equitable doctrine applies with strictness to executors and administrators, who, in common with all trustees, are prohibited from purchasing the property of the estate, when sold in the course of administration, and from making any personal profits by their dealings with it." (2 Pomeroy's Eq. Jur. sec. 953). Here, the real estate, so far as the proceeds of its sale were to be applied to the payment of these creditors, was to that extent subject to a charge in their behalf and, in a certain sense, may be regarded as their property. Whenever a fiduciary person wrongfully converts the trust funds by taking the title to himself, equity impresses a constructive trust upon the property, whose title he thus holds. Wherever property, subject to such a trust, is wrongfully sold and transferred to a *bona fide* purchaser, so that it is freed from the trust, the trust immediately attaches to the price or proceeds in the hands of the vendor. This is true, whether such price is in the form of unpaid purchase money, or a different kind of property has been taken in exchange. Whenever a trustee in such case makes a profit to himself out of the trust fund, a constructive trust is impressed upon such profit in favor of the original beneficiary. (2 Pomeroy's Eq. Jur. secs. 1051, 1052). In the case at bar, when the executrix conveyed the property to Philip at the public sale, he held the title in trust for the creditors. After he conveyed the property to his sister, the executrix, she held the title subject to the same trust. When she sold the property to other parties, the notes and mortgages taken for the purchase money thereof, or other proceeds of the sale thereof in her hands, remained impressed with the same trust in favor of the creditors. It is manifest, that the county court did not have power effectually and efficiently to enforce the trust here described against the executrix and her grantees. Equity was, therefore, justified in assuming jurisdiction, in order to enforce the trust in behalf of the creditors. In this particular case, the executrix was sole devisee

173—25

under the will, and all the property of the deceased belonged to her, subject to the payment of the debts. Her conduct in colluding with her brother in the manner, shown by the record, amounted to an appropriation of the property to herself in such a way, as to get rid of the charge of the debts upon it, without making it realize the full amount which it should have realized for the benefit of the creditors. (*McCreedy* v. *Mier, supra; Cohen* v. *Menard*, 136 Ill. 130).

Counsel for plaintiffs in error single out particular transactions and sales, and point out specific objections to the findings of the decree of the court below in relation to the same. So many different pieces of property were sold, and so many different re-sales were made by the executrix after she became possessed of the titles through deeds from her brother, that it would be impossible for us to notice all of them. It would swell this opinion to too great a length. It is sufficient to say that, in our opinion, the testimony justifies the finding of the court below in reference to these transactions. For instance, the executrix sold about 300 acres of land to Mary S. Caldwell. Upon this purchase Mrs. Caldwell still owes $2000.00. The decree properly holds that these $2000.00, when collected, should go to the estate of the deceased testator. The evidence of the indebtedness of Mrs. Caldwell to the amount of $2000.00 is held by a nephew of the executrix living in New York. But the testimony shows that he was not an innocent holder thereof, and that it should be treated as though the title to it was in the executrix herself. So also $5800.00 of purchase money remains due from Emma Riggs. The decree below properly held that this money also belongs to the estate of the deceased, although the evidence of the indebtedness is held by a nephew of the executrix in the State of New York. The evidence shows, that the holder of it had notice of the facts herein stated, and was not an innocent purchaser. Again, the deceased was in partnership with

a man named Douglas in the elevator and grain business. Philip B. Elting sold the interest of the deceased in this partnership to a man named Tate, and took in payment therefor 80 acres of land in Fulton county. Said 80 acres of land were conveyed to the executrix, who sold and conveyed the same on March 30, 1889, to one William Rector. Clearly this land and the proceeds of its sale belong to the estate of the deceased. The title to it was held by the executrix in trust for the estate, and she must account to the estate for the proceeds of its sale. So with other transactions, which need not be here mentioned. The general doctrine as to the existence of the trust, and as to the liability of the executrix and her agent to account for the property appropriated by them, and for the proceeds of the sales made by them of such property, applies to all the transactions complained of.

*Second*—The decree of the court below also sets aside a judgment, rendered by the county court against the estate of the deceased in favor of Philip B. Elting, as executor of his mother Anna M. Elting, and requires the said Philip, as the agent of the executrix, to account for the amount made by him by the sale of property purchased by him for the redemption thereof through proceedings under said judgment. The statement preceding this opinion sets forth the facts in relation to the claim upon which said judgment was based. Philip, by collusion with his sister, he being in Illinois and she being in New York, procured himself to be appointed executor of the estate of his deceased mother by a surrogate court in the State of New York. After his appointment as such executor, he cited his sister, executrix of the estate of Cornelius D. Elting, deceased, to appear before said surrogate and make an accounting. His sister in New York appeared before the surrogate, and entered her appearance, and permitted judgment to be entered against her, as executrix of the estate of Cornelius, in favor of Philip, as executor of his mother's estate, for $6174.21. This

judgment was obtained by collusion between Philip and his sister, and could not have been obtained without such collusion. Blandina had not been appointed executrix in the State of New York, and was only executrix of the estate of Cornelius by virtue of her appointment, as such in Illinois. The surrogate court of New York had no power to render a judgment against an executrix appointed in Illinois. Such is the doctrine of this court. In *Judy* v. *Kelley*, 11 Ill. 211, a judgment was rendered by a court in Ohio against an administrator, appointed in Illinois, and suit was brought on such judgment in this State; it appeared, that no administration had been taken out in Ohio, and that the administrator sued held office only by virtue of the Illinois appointment; the question in that case was, whether a judgment, recovered in another State against an administrator appointed in this State, can be here enforced against the estate; it was held that, in his official capacity, an administrator cannot be sued out of the country from which he derives his authority, and that the State of Ohio could not rightfully extend her jurisdiction over the Illinois administrator, and that judgment rendered under such circumstances was a nullity in this State. Under subsequent decisions of this court, even if the plaintiff in error, Blandina M. Elting, had taken out administration in the State of New York, or been appointed executrix there of the estate of Cornelius, a judgment rendered in favor of Philip against her, as such administratrix or executrix there appointed, would have been improperly allowed against the estate of Cornelius in this State. If allowed in this State under such circumstances, it would have been founded solely on a judgment rendered in New York against an executrix in that State, to be paid there in due course of administration. "A judgment against an administrator in one State is no evidence of indebtedness against another administrator of the same decedent in another State, for the purpose of affecting assets received by the latter un-

der his administration." (*Rosenthal* v. *Renick*, 44 Ill. 202).
If such a judgment rendered against the executrix in New
York should be allowed here, the judgment of allowance
would at best be only *prima facie* evidence of indebted-
ness as against the heirs.  (*McGarvey* v. *Darnall*, 134 Ill.
367; *Rosenthal* v. *Renick*, *supra*).  Here, however, the judg-
ment rendered in New York against the executrix of the
estate of Cornelius, who was appointed such executrix in
Illinois, and not in New York, when allowed by the county
court of Henderson county, was not even *prima facie* evi-
dence of indebtedness, because the surrogate court of
New York had no power to render such a judgment.  The
proof shows, that no other evidence was introduced be-
fore the county court to establish the claim of $6174.21,
except the transcript of the record of the judgment in
New York.  The county court, therefore, had no power
to allow the claim in favor of Philip, as executor of his
mother, against the estate of the deceased Cornelius.
(*Hedenberg* v. *Hedenberg*, 46 Conn. 30).

Certain attorneys represented Philip as executor of
the estate of his deceased mother, and, as his attorneys,
filed the claim for $6174.21 in the county court against the
estate of the deceased Cornelius.  These same attorneys
also represented the executrix of the estate of Cornelius
Elting, deceased.  The claim was filed in the county court
of Henderson county in January, 1887, long after the day
fixed by the executrix for the adjudication of claims,
which was July 20, 1885.  The claim was allowed on April
6, 1887.  No process was issued to bring in the executrix
as required by the statute.  The attorneys referred to en-
tered the appearance of the executrix.  They represented
both sides, both Philip, the executor of his mother, and
Blandina, the executrix of her deceased brother, Cor-
nelius.  The entry of appearance was a nullity, and did
not give the court jurisdiction.  (*Pennywit* v. *Foote*, 27 Ohio
St. 627).  The attorneys, while acting for Philip, execu-
tor, had no authority to represent the executrix as to that

claim.   The evidence shows, that the allowance of this
claim for $6174.21 was obtained by collusion.   It is said,
however, that a certain lawyer, other than the attorneys
mentioned, was appointed administrator *pro tem.* to defend
against the claim.   The reason for the appointment is the
alleged ground, that the executrix, Blandina, as devisee
under the will of her mother, was interested in the claim.
Such interest, however, did not appear upon the face of
the record.   Section 72 of the Administration act provides
that, when an executor or administrator has a demand
against his testator or intestate's estate, he shall file his
demand as other persons, and the court shall appoint
some discreet person to appear and defend for the estate,
and, upon the hearing, the court or the jury shall allow
such demand, or such part thereof as is legally estab-
lished, or reject the same, as shall appear just.   It did
not appear here, that the executrix had a demand against
the estate.   She did not unite with Philip in filing the
claim, as a claim owned in part, or in whole, by herself.   .
Therefore, the statute, providing for the appointment of
a discreet person to appear, and defend for the estate,
did not apply to this case.   The filing of the claim of
Philip, executor, was not such an entry of appearance by
the executrix as it would have been, had she filed the
claim in her own name.   Hence, it was necessary, either
that summons should be issued and served upon her
under section 61 of said act, which provides that, when
claims are filed after the day of adjustment, summons
shall be served on the executor, unless waived, or that
her appearance should have been entered by attorneys,
or other persons, legally authorized to enter the same.

This judgment was made use of by Philip, after it was
allowed by the county court, to redeem 80 acres of land
owned by the estate in Warren county from a sale there-
of, which had been made under a foreclosure decree.
Philip, after so redeeming and obtaining a deed, sold the
land to one Foote.

A court of chancery is invested with power to set aside a judgment thus obtained by fraudulent collusion between the parties, and, therefore, there was no error in the decree of the court below, ordering that it be set aside and annulled. In *Propst* v. *Meadows*, 13 Ill. 157, it was held, that a court of chancery is competent to grant relief against judgments of the county court obtained by fraud, in cases where the courts at law cannot do so. In *Nelson* v. *Rockwell*, 14 Ill. 375, it was held, that a party may obtain relief in equity on the ground of fraud against a void, as well as a voidable, judgment. In *Whitlock* v. *McClusky, supra*, where the holders of forged notes procured the appointment of their attorney as administrator, and by collusion with him, obtained the allowance of the claim, based upon such forged notes, in the county court, and afterwards procured an order for the sale of real estate to pay such claims, it was held, that a court of equity, in view of such fraud and collusion, would prevent the payment of the unpaid purchase money of the land to said claimants, and that the procuring of the letters of administration in pursuance of the plan to obtain the allowance of said claim, was a fraud not only upon the heirs, but also upon the court. In *Atlas Nat. Bank* v. *More*, 152 Ill. 528, it was held, that a judgment or decree, procured through fraud of either or both parties for the purpose of defrauding third persons, may be attacked by such third persons collaterally, whenever and wherever it conflicts with their interests. In the latter case we said: "A collusive judgment is open to attack whenever and wherever it may come in conflict with the rights and interests of third persons." When a judgment has been obtained by fraud, it is a mere nullity, and it may be attacked on account of the fraud in a collateral proceeding, and equity has jurisdiction to cancel and set aside such a judgment. (2 Pomeroy's Eq. Jur. sec. 919). It may be said, however, that, even if equity did not have jurisdiction to set aside this judgment, yet, as the court had

jurisdiction for the purpose of setting aside the sales made by the executrix to herself, and enforcing the trust hereinbefore mentioned against her and her agent, it would also have jurisdiction to set the judgment aside, upon the general ground that, when equity acquires jurisdiction for one purpose, it will retain it for all purposes. (*Stickney* v. *Goudy*, 132 Ill. 213).

It is said, however, by counsel for the plaintiffs in error, that, so far as this judgment is concerned, the defendants in error were guilty of *laches* in not filing their bill sooner than they did. It is alleged in the bill, that the complainants had no knowledge of the proceedings in reference to this claim, until long after it was allowed by the county court, and no opportunity to defend against the claim. If the defendants below had desired to raise the question of *laches*, they should either have demurred to the bill, or pleaded *laches*, or set it up in their answer. Here they did not do so, and are therefore estopped from raising the question now. (*Kerfoot* v. *Billings*, 160 Ill. 563).

The judgment of the Appellate Court and the decree of the circuit court are affirmed.         *Judgment affirmed.*