WILLIAM BRINKERHOFF *et al.*

*v.*

HENRY BRINKERHOFF *et al.*

*Opinion filed April 18, 1907.*

1. EXECUTORS AND ADMINISTRATORS—*an executor's purchase of land of estate at sale is merely voidable.* An executor or administrator has no power to purchase property of the estate at his own sale, either directly or through an agent, and a purchase by him under such circumstances is voidable but not void.

2. SAME—*when sale will not be set aside as having been made to an executor.* The fact that an executor loaned part of the money to his brother to enable him to purchase property at the executor's sale is not ground for setting aside the sale after the executor's death, more than four years after the sale, where he never had or claimed to have any title to the property, and where the other heirs knew at the time of the sale that he had advanced a large part of the money to his brother, who took title in his own name and held possession and control of the property, though the executor lived with him until his death.

APPEAL from the Circuit Court of Edgar county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

The bill in this case alleges that George Brinkerhoff, a citizen of Edgar county, died testate March 2, 1901. By his will his son Taylor Brinkerhoff and George Murphy were named and afterwards qualified as executors. He left no widow. The heirs and legatees were four sons and three daughters, who were all of age and under no disabilities. Besides other property he left about three hundred acres of farm land, concerning which this action is brought. After providing for the payment of his debts the will continued as follows: "I give, bequeath and devise to my children (naming them) all the rest and residue of my estate, both real and personal, to be divided in equal parts between them, share and share alike, except as hereinafter provided. Having made advancements in money and land to certain of my children and desiring that each one of my said children shall receive an equal part of my said estate, I hereby charge

the following named of my said children with the amounts received, respectively, by them," then setting out the advancements.   April 25, 1901, the executors filed a bill in the circuit court of Edgar county asking that a decree be entered authorizing them to divide or sell the real estate for the purpose of making distribution as the will directed. In this proceeding each heir and legatee of the deceased, excepting Taylor Brinkerhoff, who was a complainant, entered his appearance, waiving service and consenting that the cause might be tried and decree entered at the May special term, 1901.   A decree was duly entered directing the executors to sell the real estate and make distribution of the proceeds as directed by the will.   August 17, 1901, the executors sold at public sale at the court house in Paris, Edgar county, all the real estate of George Brinkerhoff, deceased, and at said sale the land here in question was sold to Robert McCauley and Prosper Stoneburner.   They transferred their bids to Henry Brinkerhoff and the deeds were made out to him.   The bill alleges that Henry Brinkerhoff and his brother Taylor Brinkerhoff, one of the executors, were the purchasers of the land.   In February, 1905, Taylor Brinkerhoff died testate.   He was a bachelor, leaving no heirs except his brothers and sisters.   His administrator with the will annexed is a party to the bill.   The bill further alleges that Taylor and Henry Brinkerhoff had cut off and removed large quantities of timber of the value of $3000 and had received the rents and profits from the yearly rental of the land amounting to $1200, and asks that the sale be set aside and declared void and that an accounting be had of the rents and timber and the defendants be decreed to pay complainants whatever may be found due.

Defendants, in their answer, denied that the circuit court had jurisdiction over the premises sold, and claimed that the court had no authority to direct the sale of the lands by the executors; that said executors conducted the sale in accordance with an agreement entered into by them and

.the complainants and agents of the complainants, with their knowledge and consent, after due notice. They denied that Taylor Brinkerhoff, as executor or individually, purchased any of said land at said sale. The answer further states that Taylor Brinkerhoff loaned money to Henry Brinkerhoff to enable him to pay for the premises, and that the interest, if any, said Taylor Brinkerhoff had in said premises was known to the complainants at the time of the sale and they made no objections thereto, but allowed Henry Brinkerhoff to take possession of the land and pay for it and remain in peaceful possession, as owner, for a period of more than four years before filing their bill.

After the pleadings were settled by amended bill, answers and replication, evidence was heard by the court and the same was submitted on briefs and arguments. At the next term the court found for the defendants and dismissed the bill for want of equity, at complainants' costs. From this decree the case was brought to this court by appeal.

H. S. TANNER, J. W. HOWELL, W. H. CLINTON, and SHEPHERD & TROGDON, for appellants.

F. W. DUNDAS, and F. T. O'HAIR, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellants contend that the sale August 17, 1901, of the land in question was under the decree of court, and that while the deeds were made out to Henry Brinkerhoff, as a matter of fact his brother Taylor Brinkerhoff, one of the executors who made the sale, was a joint purchaser with Henry of the lands in question. Henry Brinkerhoff testified that in May or June previous to the sale his brother Taylor came down to the farm in question, where Henry was then living, and said to him: " 'Henry, I would like for you to buy the place; I don't like to see it go out of the family.' I said, 'Taylor, I am not able to buy it.' He said, 'I will lend you what I have, and if you find you can't hold it I

will take part of it, or buy part of it from you later.' * * *
He might have talked to me a time or two before the sale.
When Taylor told me he would let me have the money I
told him all right. No other arrangement was made be-
tween us." Two hundred and two acres of land were bid
in by Robert McCauley and forty acres by Prosper Stone-
burner. McCauley was acting on the suggestion of one
Gordon, a brother-in-law of Henry Brinkerhoff. It was
testified to that neither McCauley nor Stoneburner had any
conversation with Henry Brinkerhoff or his brother Taylor
before bidding in the land; that Henry thought McCauley
was bidding for himself, and after it was struck off to Mc-
Cauley offered to give him $100 for his trade, and McCauley
told him he had bid in the land for him (Henry) and re-
fused to accept the $100; that McCauley also told Henry
that he was willing to keep the land himself. Henry was
one of the bidders on this two hundred and two-acre tract.
Stoneburner bid in the forty-acre tract for himself but con-
sented to turn it over to Henry at the same price. Several
hundred people attended the sale. There is nothing in the
record to show that Taylor Brinkerhoff knew anything about
who these people were bidding for.

We think counsel for the appellants misunderstand the
evidence of Robert McCauley as to their claim that he tes-
tified that Taylor Brinkerhoff offered to pay him $10 for
his trouble in bidding in the land. We have read the evi-
dence on this point, both in the abstract and record, and
the conclusion we draw from it is, that McCauley was tes-
tifying that Henry Brinkerhoff offered to pay him $10 for
bidding in the land, and that he did not meet Taylor until
after this, when Henry invited McCauley to a saloon for a
drink and there for the first time he was introduced to Tay-
lor Brinkerhoff.

Two or three days after the sale all of the parties or
their representatives met in an attorney's office to settle, and
Henry Brinkerhoff paid for the land $19,415 by a check

on the Edgar County National Bank, payable to George Murphy and Taylor Brinkerhoff, as executors. Taylor loaned him at that time $8000 to assist in the payment and later loaned him another $1000. He also signed notes with Henry for several thousand dollars, on which Henry raised money at the bank. Henry testified that he paid these notes but that he was still owing this $9000 to the estate of Taylor Brinkerhoff. Previous to this sale Taylor Brinkerhoff had been living for some time with one of his sisters, and shortly thereafter moved to the old farm and lived with his brother Henry until his (Taylor's) death. An additional room which he occupied was built on the house for his use. There is some testimony that in the absence of Henry, Taylor, while he resided at the farm, paid certain bills and looked after certain things on the farm, but the great weight of the testimony is to the effect that from the time of the purchase Henry managed and controlled the farm and that Taylor had nothing to do with its actual management, except, possibly, in looking after these small matters in his brother's absence.

After Taylor Brinkerhoff's death his administrator, Dyas, saw Henry Brinkerhoff for the purpose of finding out about Taylor's estate, and he testified that Henry told him that when the farm was sold he (Henry) did not have enough money to buy it, and that Taylor told him he would let him have enough and would help him, or something to that effect, and that he (Henry) had bought the land. Dyas then asked him if Taylor had put any money into the land, and he said no; that Taylor retained an interest in the land to the amount of the money he put in and retained that to the time of his death, and that there was no deed ever made to Taylor. Henry, in testifying about this conversation with Dyas, said that Dyas inquired, as near as he could remember: "'Aren't you into a contract or something of the kind?' I don't know just what it was. I told him that Taylor had came down to the place and says to me, 'I will

lend you the money, and if you find out you can't hold this place I will take part of it from you afterwards.' Now, that is the interest Dyas spoke if Taylor had any at the time of his death."

The majority of the brothers and sisters testified as to talks with Henry Brinkerhoff about the sale of Taylor's interest in the land. The testimony on this point is conflicting, as is also that on the question as to when the appellants first had actual knowledge of the relations between Henry and Taylor Brinkerhoff as to the purchase of the farm. The weight of the testimony in the record tends very strongly to show that they knew, as soon as the sale took place, that Taylor had furnished some of the money to pay for the land. Those of the complainants who testified insist that they did not know, or have any reason to suppose, that Taylor was a joint purchaser until after his death. This record shows conclusively that in the presence of some of the complainants, Taylor, on the day that the transaction was closed up, was charged with putting more money into the land than Henry was putting in. The conclusion from the entire record is irresistible that all the complainants knew from the day of the sale, or very shortly thereafter, that Taylor had furnished nearly half of the money put into the land.

The land, as we have stated, was deeded to Henry Brinkerhoff, and there seems to have been no papers passed between him and Taylor to secure the loan that was alleged to have been made or any interest that Taylor might have had in the land. It is very clear that whatever transactions there were between them were not carried on in the most businesslike manner. It has long been the established doctrine that an executor or administrator has no power to purchase property at his own sale, and that he cannot do indirectly by an agent what he cannot do directly by himself. Such a purchase is not void, but voidable. *Thorp* v. *McCullum,* 1 Gilm. 614; *Miles* v. *Wheeler,* 43 Ill. 123; *Kruse*

v. *Steffens,* 47 id. 112; *Ebelmesser* v. *Ebelmesser,* 99 id. 541; *Mason* v. *Odum,* 210 id. 471.

We think the weight of the evidence in this record is more consistent with the explanation given by Henry Brinkerhoff as to the actual interest or relations that he and Taylor Brinkerhoff had in the purchase of the farm than it is with the theory and contention of appellants. Moreover, the sale was only voidable, and while *laches* from delay can not arise until knowledge has been acquired by those who are charged with it, and a party is not held to the same diligence to discover fraud where the person charged therewith is in the relation of trust and confidence which requires him to disclose the truth to the other, yet it is plain appellants, from the day of the sale, knew that Taylor had advanced money for the loan. There is nothing to show that there was any diligence, until after his death, to find out as to his actual interest in the land. Henry Brinkerhoff remained in open, notorious possession, controlling and managing the land, from the time of the sale. So far as this record discloses, Taylor Brinkerhoff never claimed that he had any interest in it of any kind or nature. His brothers and sisters never asked him what his interest was. There is no reason to suppose, from his talk with them as to advancing the money, that he would have concealed the actual state of affairs had inquiry been made. The chancellor who heard the case saw the witnesses and was better able to judge of the weight to be given to their testimony than we are from the record alone. Our examination of the briefs and record in the case convinces us that the evidence justified his finding on the facts and warranted him in dismissing the bill for want of equity.

Our conclusions on these questions render it unnecessary to consider the other points raised in the briefs.

The decree of the circuit court will accordingly be affirmed.

*Decree affirmed.*