## THOMAS ATTRIDGE *et al.*

### *v.*

## DANIEL BILLINGS *et al.*

1. GUARDIAN AND WARD—*purchasing land with the ward's money.* Three persons owned an "improvement" on land belonging to the United States. One of them died, leaving children, of whom one of the surviving owners became guardian, receiving money in that capacity, which he loaned upon mortgage security, as required by law. Afterwards the two surviving owners of the improvement purchased the land from the government in their own right. Upon bill filed by the wards to have a trust declared in their favor in respect to such portion of the land as would be embraced in their father's interest in the "improvement," it was held to be no part of the guardian's duty to appropriate any portion of the wards' money towards the purchase of any of this land for them.

2. Guardians will not, ordinarily, be permitted to change the personal property of the infant into real property, or the real property into personalty.

3. STEPCHILDREN—*of their support.*    A step father is under no legal obligation to support his wife's children by a former marriage.

4. "IMPROVEMENTS" *on public land—subsequent sale by the government.* The owner of an "improvement" on the public lands can not set the same up in bar of any action by a *bona fide* purchaser of such lands from the United States.    While such "improvements" are regarded as *property* in this State, the right expires on a sale of the land by the government to a third person.

5. WIDOW—*of her right to occupy the home place.*    Where a party died while the owner of a "claim" or "improvement" upon the public lands, and upon which he resided with his family at the time of his death, and his widow became his administratrix, it was *held,* that within the spirit of the statute which provides that the widow may, in all cases, retain the full possession of the dwelling house in which her husband most usually dwelt next before his death, together with the outhouses and plantation thereto belonging, free from molestation and rent, until her dower be assigned, the administratrix was guilty of no breach of duty in occupying this claim as a home, instead of selling it.

APPEAL from the Circuit Court of Lake county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. W. S. SEARLS, for the appellants.

Mr. H. T. STEELE, for the appellees.

MR. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed in the Lake county circuit court on the 30th day of December, 1858, by Daniel Billings, and Ann Billings, his wife, and William J. Robinson, and Sarah, his wife, (the said Ann and Sarah being two of the children and heirs at law of Robert Swanton, deceased,) against Thomas Attridge, and Mary, his wife, James Swanton, John Swanton, Martha Swanton, (the said Mary, James, John and Martha, being the four other children and heirs at law of said Robert) and James Cole and Thomas Cole, for the purpose of having a trust decreed in favor of the said Ann and Sarah, in 124 64-100 acres of land, a portion of two

certain quarter sections of land, which had been respectively entered and purchased from the United States by the said James and Thomas Cole, to-wit : the southeast quarter of section 29, and the northeast quarter of section 32, township 44 north, range 12 east, of the 3d principal meridian, in Lake county, Illinois.

The state of facts out of which the supposed trust is claimed to arise, is substantially as follows :   In the fall of 1837, Robert Swanton came into the country with his father-in-law, James Cole, and his brother-in-law Thomas Cole, and all of them united in buying from one King, in Lake county, "a claim" on the public lands.   King then had, on his claim, five or six acres of land fenced and under cultivation, and a log cabin and stable.   They paid him $100 for his claim, of which Thomas Cole contributed one-fourth, ($25,) and Swanton and James Cole each three-eighths, ($37.50.)

The government surveys had not yet been made, and were not made until after the death of Swanton.

They all lived together with their families in the log cabin the first winter.   The next season, Swanton built another " shanty " on another part of the claim, into which he moved with his family, where he continued to reside until his death, June 16, 1839.   After his death, his widow and children continued to occupy the "shanty" in which he lived at the time of his death, until his widow married Thomas Attridge, May 29, 1841 ; and after awhile they built another house, not more than three or four rods from the former one, which they have ever since continued to reside in.   In August, 1838, Thomas Cole also built a house for himself on another part of the "claim" into which he moved and resided with his family.

The first year after the purchase from King, they all worked the land together.   When the land was broken up the second year, they divided it, Thomas Cole taking a fourth part, and James Cole and Robert Swanton three-eighths each, of the land so broken up and cultivated.   When the government surveys

came to be made, it was found the three houses were on separate quarter sections of land; the one which was on the claim at the time of the purchase from King, and in which James Cole continued to reside, being on the northeast quarter of section 32; the one built by Swanton, and in which he resided, being on the southwest quarter of section 28, and the one built by Thomas Cole, and in which he resided, being on the southeast quarter of section 29; a part of the land so broken up and worked by Swanton, was found to be upon both the northeast quarter of 32, and the southeast quarter of 29.

On the 30th of January, 1841, letters of administration upon the estate of Swanton were granted to his widow. A bill of appraisement on file in the probate court, finds the value of the estate to be $1,169; the first item mentioned therein being "*the claim,*" appraised at $200, and another item being "cash $660." No sale of any of the property appears to have been at any time reported, or made.

On the 7th of May, 1841, James Cole was appointed guardian of Swanton's six minor children. On the 14th day of July, 1841, James Cole and Thomas Cole proved up their rights of pre-emption to the two quarter sections of land, which were granted to them, and they purchased the lands for $200 each, and patents were subsequently issued to them, to Thomas Cole for the southeast quarter of section 29, and to James Cole for the northeast quarter of section 32, being the same lands covered by "the claim."

On the 20th of March, 1846, about five years after the entries of the land, the patentees, James and Thomas Cole, conveyed to the appellant Thomas Attridge, 85 acres of the land, described by metes and bounds, a portion being in each of the two quarter sections so entered by James and Thomas Cole. In the meantime, the appellants had continued, as before, to cultivate the land so deeded; all of the remaining portions of the two quarter sections not deeded to Attridge, were subsequently conveyed away by the patentees

to third parties, 36 64-100 acres of which, however, were pur-
chased by Thomas Attridge before the filing of the bill in this
case, so that at the commencement of this suit, Thomas
Attridge was in possession of 121 64-100 acres of the
lands so pre-empted and entered by James and Thomas Cole.

The original bill charged, that there was an agreement
between Swanton, and James and Thomas Cole, that each of
them should have the fee in the equal undivided one-third
part of the above described lands when they should be
entered, and that each should pay the one-third of the pur-
chase money thereof; and further, that said James and Thomas
Cole took the money, to pay for the entry of the lands, from
the estate of Robert Swanton, and that the money paid for
said lands, by said Coles, belonged to the estate of Swanton at
the time of the entry and payment therefor.

The amended bill varied the statement of the agreement
between Swanton and the Coles, charging it to be, that after
the purchase, Swanton should have the fee in one half of said
lands, and make payment for the same, and that the Coles
should have the interest in the other half, and make payment
therefor.

There is no evidence whatever of any such agreement, fur-
ther than what might be inferred from the facts above stated,
and they are insufficient to afford ground for such inference.
Instead of there being the clear proof necessary, to show that
any money belonging to the estate of Swanton went into the
purchase of the lands, there is no proof to that effect; but on
the contrary, there is the positive testimony of Thomas
Attridge, that $100, to pay for the 85 acres of land, was fur-
nished to the Coles by his wife, from money which came to
her from her interest in her husband's estate.

It is true, that James Cole, as guardian of the children of
Swanton, had, at the time, some of their money in his hands.
The appraised value of the estate, according to the bill of
appraisement, was $1,169, one item being the claim, at $200.
From a paper writing found among the files in the probate

court, in the Swanton estate, in the hand writing of the pro-
bate justice, it satisfactorily appears, that $602.66 was found
by the court to be the amount of the distributive share of the
heirs in the estate, but in that figuring, $200 was allowed for
the claim ; and as that was never disposed of, it should be
excluded ; and doing that, would make the amount $469.34,
which came into the hands of James Cole as guardian ; $400
of this he put at interest on mortgage security, as required by
the statute, and paid it over to the children on their attaining
their majority.

It can not justly be said, that it was the duty of the guar-
dian to appropriate any portion of this money towards the
purchase of any of this land for his wards.   Guardians will
not, ordinarily, be permitted to change the personal property
of the infant into real property, or the real property into per-
sonalty. 2 Story Eq. Ju. sec. 1357.

The guardian would have had good reason to believe, that
all this money would have been needed for the support, main-
tenance and education of these six minor children during their
minority.   Their mother possessed no means for their support;
all her property that she appears to have possessed, became that
of her husband, Thomas Attridge, on her intermarriage with
him ; and he, the stepfather of the children, was under no legal
obligation to support them.   And this money might well have
been held by the guardian for the support of his wards, instead
of investing it in real estate for them.

But it is said, that under our statute, and decisions of this
court, improvements on the public lands, before entry, were
*property;* and the question is asked, in what manner the estate
of Swanton has been divested of its interest in these two quar-
ter sections ?   The answer is, by a sale by the United States.

The statute, making valid, contracts for the sale and pur-
chase of improvements on the lands owned by the government
of the United States, and recognizing "claims" upon them,
and giving an action for their protection, expressly provides,
that such claim shall not be pleaded or set up in bar of any

action by a *bona fide* purchaser of such lands from the United States.

Whatever interest the estate of Swanton had in these two quarter sections, expired on the sale of them by the United States to James Cole and Thomas Cole. The government was the absolute owner of the lands up to the date of the entry and purchase, and the Coles took a title to the lands and all the improvements upon them, entirely free and unincumbered.

We fail to see any such misconduct as is claimed in their fiduciary relation to this property, of either Mary Attridge as administratrix, or James Cole as guardian, as should affect it with any trust in favor of the heirs of Swanton.

Although the claim was appraised at $200, we can not hold it to have been the duty of the administratrix, as there were no claims of creditors concerned, to have sold the claim for the benefit of the estate, and thus dispose of the home of herself and her family of dependent children.

Within the spirit of the statute, which provides that the widow may, in all cases, retain the full possession of the dwelling house in which her husband most usually dwelt next before his death, together with the outhouses and plantation thereto belonging, free from molestation and rent, until her dower be assigned, the administratrix was guilty of no breach of duty in occupying this claim as a home, instead of selling it.

James Cole did not make a purchase of property which his wards had any interest in; they had no interest in the land, as against the United States or its grantees. Robert Swanton had acquired no pre-emption right to any of the land; but the pre-emption right was adjudged to James Cole and Thomas Cole, and in their purchase they but availed themselves of a right awarded to them under the law.

The fact that Mary Attridge, the widow of Swanton, and daughter of James Cole, furnished the purchase money for 85 acres of the land, and that the latter consented to its being bought for her, or her husband, in his name, we do not regard as a

recognition, by Cole, of a subsisting legal or equitable interest of the heirs of Swanton in the land. Allowing this to be done, was but an act of favor on the part of Cole, and not a matter of legal obligation. We can assign to it no greater weight than as being in discharge of a moral obligation.

So far as appears, no pre-emption right, in respect to the two quarter sections in question, could have been established in Robert Swanton. The pre-emption law of the 22d of June, 1838, the one which must apply, required the personal residence of the settler on the land at the time of the passage of the act, and for four months next preceding, in order to entitle him to the benefit of its provisions.

According to the testimony of Samuel Cole, they all three, Robert Swanton, James and Thomas Cole, lived in the log house on the northeast quarter of 32, the first winter, and the next season (1838,) Swanton built another "shanty" on another quarter section, the southwest quarter of 28, into which he moved with his family.

The complainants below introduced in evidence the affidavits of James Cole and Thomas Cole, made on proving up their rights of pre-emption, in both of which it is stated, that no other person than James Cole resided on the northeast quarter of section 32, between February 22d, 1837, and June 22d, 1838; so that, according to those affidavits, Swanton must have gone off from the northeast quarter of 32, and on to the southwest quarter of 28, as early as February 22d, 1838.

The other four children and heirs of Swanton, filed their answers and disclaimers, disclaiming all interest whatever in the lands described in the bill, or in any part thereof, and in the estate of Swanton. The appellants have a title to the lands from government down, and they had been in continuous possession for nearly twenty years before the bill was filed, paying all the taxes. The complainants, Ann and Sarah, upon arriving at their majority, received, the one, $112, and the other, $96.20, from James Cole, being, as he informed them,

their full share of the estate of Swanton. They suffer the matter to slumber, Ann, for nine years, and Sarah for five years, after attaining their majority, before bringing this bill.

At the death of their father, Ann was but eight, and Sarah but four years old; and although they did not live at home during the entire term of their minority, they must have done so for some four or five years each.

Upon the death of Robert Swanton, a helpless family of six children was left to be supported. The mother supported them herself until she married Attridge, and after that time her husband and herself supported and clothed them for at least quite a portion of their minority; and out of the small estate left, $400 was kept at interest by their guardian, from May 20th, 1845, and out of which Ann and Sarah have each received their share, when the whole amount of it might properly have been expended in their support.

We regard the case as destitute of equity, and think the court erred in decreeing the relief sought as to 85 acres of the land.

The decree is reversed and cause remanded for further proceedings in conformity herewith.

*Decree reversed.*