WILMER G. CHAPMAN *et al.* Plaintiffs in Error, *vs.* THE
AMERICAN SURETY COMPANY, Defendant in Error.

*Opinion filed February 21, 1914.*

1. INJUNCTION—*equity has jurisdiction to enjoin proceedings at law.* A court of equity has jurisdiction to enjoin proceedings at law, not because of any supremacy of courts. of equity over courts of law, but because the controversy between the parties litigant involves equitable features which can be fully and finally determined only by a tribunal having equitable jurisdiction.

2. SAME—*when equity may stay a proceeding begun in county court to require guardian to account.* While county and probate courts may exercise equitable jurisdiction in the matter of settling the accounts of a guardian, yet if the county or probate court has no power to grant the full equitable relief on the facts established, a court of equity has power to stay the proceedings by injunction and assume jurisdiction to grant the full relief required.

3. GUARDIAN AND WARD—*court of equity may require guardian to account.* Guardians are· regarded as trustees, and may be compelled, in chancery, to render an account before as well as after the termination of the guardianship.

4. SAME—*a guardian has no power to invest ward's money in land unless authorized by statute.* Unless authorized by statute a guardian has no power to invest the ward's money in land, and in Illinois neither the county nor the probate court has power to authorize such investment or to approve the same; nor can the circuit court, on appeal from the county or probate court, approve such investment, as its powers, on appeal, are limited to the doing of such things as the county or probate court had power to do and should have done.

5. SAME—*a court of equity may authorize a guardian to invest ward's money in land.* A court of equity, in a proper case, may authorize a guardian to invest the ward's money in land, and it may also approve an unauthorized investment when the facts established are such that the court would have granted the authority in the first instance.

6. SAME—*when court of equity may enjoin proceeding to compel guardian to account.* Where a guardian, acting in good faith and for the best interest of his ward, invests the ward's money in land under an order of the county court but is subsequently called upon by the county court to account, and is ordered, after litigation extending through the county, circuit and Appellate Courts, to sell the land and restore the money to the ward, a court of

equity may enjoin further prosecution of the proceedings, and, if the facts established so warrant, may approve the investment and permit the ward to retain the land.

7. SAME—*when judgment in a statutory proceeding requiring accounting from a guardian is not res judicata.* A judgment in a statutory proceeding against a guardian requiring him to sell land purchased by him in good faith for the ward with the ward's money and restore the money, with the profit, if any, to the ward's estate, is not *res judicata* in a subsequent proceeding in equity by the ward and the guardian to have the investment approved and to permit the ward to retain the land.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. W. B. SCHOLFIELD, Judge, presiding.

ACTON & ACTON, for plaintiffs in error.

O. M. JONES, and WALTER J. BOOKWALTER, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Vermilion county seeking to enjoin the parties to a judgment compelling a guardian to make an accounting under the statute, entered in that court in pursuance of a mandate of the Appellate Court. The trial court granted the injunction, and an appeal was taken to the Appellate Court for the Third District, which reversed the decision and remanded the cause, with directions to dismiss the bill for want of equity. The case has been brought to this court on a petition for *certiorari.*

Eli S. Sperry was the guardian, by appointment of the county court of Vermilion county, of the plaintiffs in error, who were minors. Defendant in error became the surety for said guardian March 23, 1907. In December, 1909, the grandfather of said minors notified said guardian that he would advance $7000 to apply on the purchase of a tract

of land for them.   An 80-acre tract of land was selected
and purchased at a cost of $7656.25.   Of this amount the
grandfather furnished the $7000 promised by him, and the
guardian, after filing a petition and obtaining an order there-
for in said county court, furnished the balance ($656.25)
out of the guardian's funds in his hands.   In October,
1907, the said guardian filed a petition in said county court
asking leave to purchase about 168 acres of land in said
county for said minors at a cost of $16,775.30.   The peti-
tion was granted by said court and the guardian purchased
the land, paying therefor $7000 in his hands out of the per-
sonal property of said minors, taking the land subject to
a mortgage of $8000 and giving a note signed by him, as
said guardian, for $1775.30.   The title was taken in the
name of the two wards.   One of the wards became of the
age of fourteen years in August, 1908, and the other in
January, 1911.   Each, upon becoming of that age, named
as his guardian his father, F. J. Chapman, who duly quali-
fied as such guardian.   In March, 1908, said Sperry, as
guardian, filed a new bond, with other bondsmen than said
defendant in error company.   At the January term, 1909,
of said county court, defendant in error, said surety com-
pany, filed a petition setting forth that it had been surety
on said bond and the filing of a new bond with other
bondsmen, and asked for an order requiring said guardian
to file an account of his acts since his appointment, and
that he be required to restore to the personal property the
amount so taken to be invested in real estate; that upon
such restoration and approval of the guardian's report said
surety company be discharged from further liability as his
bondsman.   The county court sustained a demurrer to this
petition.   Said surety company then took an appeal to the
circuit court of Vermilion county, which also sustained the
demurrer.   The company thereupon took an appeal to the
Appellate Court for the Third District, where the judg-
ment of the circuit court was reversed and the cause re-

manded, with directions to overrule the demurrer and require the guardian to file an account. (*American Surety Co.* v. *Sperry,* 156 Ill. App. 19.) On the case being remanded, the probate court (which had been established in Vermilion county to take the place of the county court in probate matters) required an accounting by the guardian, who thereafter filed his report, the surety company objecting to it on the ground that the court had no authority to direct that the personal property in question should be invested in real estate. The objections being overruled, the surety company took an appeal to the circuit court, which also overruled the objections and entered an order approving the report, including the investment of the funds in the real estate, and discharging said company from further liability on its bond as surety. That all the parties in this matter acted in good faith in the investment of the funds in the real estate is conceded. From this last decree of the circuit court the surety company again appealed to the Appellate Court, and that court held that the investment of the $656.25 by the guardian to complete the purchase of the first farm with the amount advanced by the grandfather was proper and legal, being in the nature of the removal of an encumbrance or balance due on the land and necessary in order to protect the interests of the minors in the real estate. The Appellate Court further found that the guardian had no authority to invest in real estate the funds of the minors which had not been derived from real estate, and that the probate (county) court had no right to authorize the guardian to so invest the $7000 which he did in the 168-acre tract. The Appellate Court reversed the judgment of the circuit court and remanded the cause, with directions to that court to direct the guardian to dispose of said last named tract of land in which he had invested the $7000 and restore the funds to the personal property; that upon turning over said funds to his successor the court should discharge said surety company from further liabil-

ity on its bond; that the minors were entitled to whatever profits there might be upon the sale of said land over the amount invested therein, and that if said profits were less than the statutory interest, then said guardian should be required to account for such difference in interest. *American Surety Co.* v. *Sperry,* 171 Ill. App. 56.

After said cause had been reversed the first time by the Appellate Court and the petition of the surety company had been denied the second time by the probate court of Vermilion county, while the appeal of said surety company was pending and undetermined in the said circuit court, the original bill' in this cause was filed against the surety company and the former guardian, Sperry. Both entered their appearance and filed a general demurrer to said bill. It seems that by mutual consent these chancery proceedings in the circuit court were permitted to stand while the statutory action on the petition of the surety company proceeded to final judgment in the circuit court on appeal. After the second appeal in said statutory matter had been decided in the Appellate Court, a supplemental bill of complaint was filed in the circuit court in this cause, alleging, in addition to the facts stated in the original bill of complaint, the facts as to the litigation as heretofore set out under the statutory proceeding and the result of that litigation as decided by the Appellate Court; that neither the county court nor probate court had authority of law to direct the guardian to invest the proceeds from the personal property in real estate. The supplemental bill further alleged that the complainants were minors under legal age, and therefore could not elect to retain and hold said real estate instead of the money invested in the same; that they owned in the same county some 800 acres near the said 168-acre tract; that they lived on said land and would soon become of legal age; that each of them expected to follow farming as his life occupation; that said real estate, as above described, had increased in market value over $3000 since its pur-

chase and was steadily increasing in value; that it was very much to the advantage of said minors that said land should not be sold but be retained by them, not only on account of the increase in value and the probable increase in the future, but also because they would need said land in their farming operations after reaching legal age. The supplemental bill further averred that neither the county nor probate court had power to review said investment after it was made, but that the circuit court, as a court of chancery, in the exercise of such jurisdiction over the estate of infants and for and in their behalf, was authorized by decree to ratify the investment of the proceeds of the personalty in real estate and enjoin the sale of said lands, and prayed that such order might be entered as was necessary to retain said lands for said infants. A general demurrer was filed by the surety company and by Sperry, the former guardian. This was overruled in the circuit court, and the surety company and Sperry electing to stand by their demurrers, a final decree was entered finding the facts to be true as set forth in the supplemental bill, and granting the relief prayed.

The first question presented in the briefs is whether a court of equity can by an injunction stay the proceedings, already prosecuted under our statute, compelling an accounting by the guardian as heretofore set out. The occasions on which the remedy of injunction may be used are almost infinite in their nature and circumstances. (2 Story's Eq. Jur.—13th ed.—sec. 885.) No branch of equity jurisdiction is more frequently invoked. The use of injunctions to stay actions at law was substantially coeval with the establishment of chancery jurisdiction. That jurisdiction was largely built up through the instrumentality of injunctions in restraining the prosecution of legal actions where the aid of chancery was sought because the equities of the case could not be considered in the common law action. In the exercise of this jurisdiction courts of equity assert no su-

premacy over courts of law. The injunction virtually admits and assumes their jurisdiction. It is addressed to the litigant parties, prohibiting them from resorting to legal jurisdiction because the controversies involve equitable features which can only be fully and finally determined in a tribunal having equitable jurisdiction. (4 Pomeroy's Eq. Jur. sec. 1360; 1 High on Injunctions,—4th ed.—sec. 45.) Where the court at law can do as full justice to the parties and the matters in dispute as can be done in equity, the proceedings at law will not be stayed. The principle is also well established that when a cause belongs to the jurisdiction of the law courts, equity will never interfere to restrain the prosecution of an action upon any mere legal grounds, although it may appear that the complainant in equity had a valid legal defense which was not availed of, either through the error of the court in determining the law or the facts or the omission of himself or his counsel in presenting it. (4 Pomeroy's Eq. Jur.—3d ed.—sec. 1361.) If, however, he was prevented from raising this defense in the action at law by fraud, accident or mistake, unmixed with any fault or negligence on the part of himself or his agents, a court of equity may then take jurisdiction. (2 Story's Eq. Jur.—13th ed.—sec. 887.) If the matter relied upon by the complainants could not be received as a defense in an action at law, equity may relieve notwithstanding an ineffectual attempt to defend at law. (*Harding* v. *Hawkins,* 141 Ill. 572; 1 Black on Judgments, sec. 388, and cases cited; see, also, *Gregg* v. *Brower,* 67 Ill. 525; *Weaver* v. *Poyer,* 79 id. 417; *Hawley* v. *Simons,* 102 id. 115; 23 Cyc. 1222, and cases cited; 16 Am. & Eng. Ency. of Law,—2d ed.—378.) We have held that a court may grant an injunction to restrain parties to another action in the same court, and this though it was objected that the same relief could be had in the original action, where the parties are the same, which was still pending in the same court. (*Farwell* v. *Great Western Telegraph Co.* 161 Ill.

522.) The bill for injunction may be entertained in equity "before the commencement of a suit at law, pending such suit or after its decision by the highest law tribunal." *Parker* v. *Judges,* 12 Wheat. 561; *Erie Railway Co.* v. *Ramsay,* 45 N. Y. 637.

The proceedings for an accounting in the probate court, under our statute, are not, however, common law actions. This court has frequently said that the probate court has a sort of equitable jurisdiction over claims presented to it for allowance. (*Gilbert* v. *Guptill,* 34 Ill. 112; *Hurd* v. *Slaten,* 43 id. 348; *McCall* v. *Lee,* 120 id. 261.) In the allowance of claims against an estate, the county (probate) court may adopt the forms of proceedings in equity. (*Dixon* v. *Buell,* 21 Ill. 203.) It possesses a similar jurisdiction and may adopt a similar mode of procedure in the adjustment of guardians' accounts. A citation to account is not a suit at law but the exercise of a summary power conferred by the statute. (*In re Steele,* 65 Ill. 322; *Millard* v. *Harris,* 119 id. 185; *Cheney* v. *Roodhouse,* 135 id. 257.) It has been likened to a bill in chancery for discovery against a guardian, being necessary to "sift his conscience" (*Gilbert* v. *Guptill, supra,* p. 140,) to make certain of the facts. In settling the accounts of guardians it has been repeatedly held that the probate court may exercise equitable jurisdiction, "not its full jurisdiction, but such as is adapted to its organization and the mode of proceeding in that tribunal." (*Wadsworth* v. *Connell,* 104 Ill. 369.) "It lies in the nature of these courts that in the exercise of their jurisdiction they are not confined to legal principles or the rules of common law courts but exercise equitable powers as well." (1 Woerner's Am. Law of Administration,—2d ed.—sec. 149.) Whenever, within the scope of their statutory jurisdiction, the relief to be administered, the right to be enforced or the defense of an action properly depending before them involves the application of equitable principles, their powers are commensurate with the

duties demanding their exercise, whether legal or equitable. (*Shepard* v. *Speer,* 140 Ill. 238.) Probate courts cannot exercise, under the constitution, full equity jurisdiction. (*In re Estate of Mortenson,* 248 Ill. 520; *Frackelton* v. *Masters,* 249 id. 30.) Obviously, if the probate court, under the statute, did not have power to grant full equitable relief on the facts shown, then, under the principles of law heretofore set out, a court of equity could interpose and make such relief available. The fact that the former statutory proceedings were in the nature of chancery proceedings would not preclude a court of general chancery powers from assuming jurisdiction. This court said in *Farwell* v. *Great Western Telegraph Co. supra,* on page 617: "On principle and authority it must be held that, in a case demanding it, jurisdiction exists in a court of equity to grant an injunction in one action to affect the proceedings in another action already pending in the same court, whether they be actions at law or in equity." *Erie Railway Co.* v. *Ramsay, supra.*

Guardians are regarded as trustees, and may be compelled in chancery to render an account before, as well as after, the termination of the guardianship. (*Bond* v. *Lockwood,* 33 Ill. 212.) This court there also stated (p. 218): "The provisions of the statute in relation to guardians were not designed as a complete code, but were enacted to confer upon the county court power to appoint guardians and to regulate their conduct in accordance with their duties at common law." To the same effect are *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626, and *Schmidt* v. *Shaver,* 196 id. 108.

Section 22 of the statute on guardian and ward provides, in terms, how the guardian shall invest the personal property of the ward. (Hurd's Stat. 1911, p. 1264.) The provisions of this statute as to the investment of the ward's money have been held by this court mandatory. (*McIntyre* v. *People,* 103 Ill. 142; *Hughes* v. *People,* 111 id. 457;

*Kattelman* v. *Guthrie*, 142 id. 357.)   Probate courts have
no power to call guardians to account save as specified by
statute.   (Woerner on Guardianship, sec. 94.)   There is no
provision in this statute authorizing the investment of the
minor's personal estate in real estate, and that fact justifies
the conclusion that it was not intended to authorize the pro-
bate court to allow the guardian to so invest.   This con-
clusion is strengthened by the fact that section 28 of the
same statute on guardian and ward provides that the pro-
ceeds from the sale of real estate authorized to be sold
thereunder may be invested in other real estate.   The pro-
bate courts take all their powers from the statute regulating
them.   They can only exercise such powers as are directly
conferred upon them by legislative enactment or are neces-
sary to carry out some power so conferred.   (1 Woerner's
Am. Law of Administration,—2d ed.—sec. 142, and cases
cited; *People* v. *Seelye*, 146 Ill. 189.)   The general rule
in this country is, that the guardian has no power to invest
his ward's personal estate in the purchase of real estate un-
less the purchase is ordered by the court under statutory
authority.   (15 Am. & Eng. Ency. of Law,—2d ed.—68,
and cases cited.)   Manifestly, the probate court could not
properly direct or empower the investment of the ward's
money by the guardian in the purchase of said 168-acre
tract of land.   That being so, it necessarily follows that the
probate court could not, on the accounting, ratify or con-
firm such investment.   The circuit court, on appeal from the
probate court, could not properly exercise any power save
that which the probate court could and should have done.
(*Miller* v. *Miller*, 82 Ill. 463; 2 Woerner's Am. Law of
Administration,—2d ed.—sec. 550.)   Generally, the guard-
ian is not permitted to change the nature of the property,
as by turning personal into real estate, although this may
be allowed by a court of competent jurisdiction when un-
der the circumstances it appears to be for the benefit of the
infant ward.   (3 Pomeroy's Eq. Jur.—3d ed.—sec. 1309;

*Attridge* v. *Billings,* 57 Ill. 489.) If the guardian turns the personalty into real estate without the order of the proper court and it is manifestly for the benefit of the infant, a court of equity will support his conduct "if the act be such as the court itself would have done under like circumstances by its own order." (2 Story's Eq. Jur.— 13th ed.—sec. 1357.)

It is argued, however, that the settlement of accounts having been placed by statute in the probate court, it was the intention to take such jurisdiction from the court of chancery. Wherever that court has, as a part of its inherent powers, jurisdiction in certain matters, such jurisdiction is not, in general, lost or abridged where other courts have acquired jurisdiction to grant the same or different relief. (1 Pomeroy's Eq. Jur.—3d ed.—sec. 276.) The same author says in section 279: "Where the new power is conferred upon the law courts by statutory legislation, the rule is well settled that unless the statute contains negative words or other language taking away the pre-existing equitable jurisdiction, or unless the whole scope of the statute, by its reasonable construction and its operation, shows a clear legislative intent to abolish that jurisdiction, the former jurisdiction of equity to grant its relief under the circumstances continues unabridged." Statutes that abrogate or abridge that jurisdiction are to be strictly construed. (*Black* v. *Boyd,* 50 Ohio St. 46.) This court, in *Howell* v. *Moores,* 127 Ill. 67, in discussing the jurisdiction of probate courts, held that under the constitution circuit courts had original jurisdiction in all cases at law and in equity, therefore the jurisdiction conferred upon the county or probate courts was concurrent only with that previously existing in the circuit courts in matters of trust; that under the constitution this equity jurisdiction could not be taken from the courts of equity by the legislature. This court has more than once stated that courts of equity have a paramount jurisdiction in matters of administration and settlement of es-

tates and may control courts of law in their action thereon, and have also similar plenary jurisdiction over the persons and estates of infants, and in exercising that jurisdiction may cause to be done whatever may be necessary to preserve their estates and protect their interests. (*Grattan* v. *Grattan,* 18 Ill. 167; *Lynch* v. *Rotan,* 39 id. 14.; *Hartmann* v. *Hartmann,* 59 id. 103; *Ames* v. *Ames,* 148 id. 321, and 151 id. 280; 3 Pomeroy's Eq. Jur.—3d ed.—sec. 1154, and note.) The rule now appears to be that courts of equity will not exercise jurisdiction over the administration of estates in ordinary cases. (*Winslow* v. *Leland,* 128 Ill. 304; *Duval* v. *Duval,* 153 id. 49; *Elting* v. *First Nat. Bank,* 173 id. 368; *Strauss* v. *Phillips,* 189 id. 9.; *Genz* v. *Genz,* 254 id. 161.) "Where it is for the benefit of the minor, courts of equity have the power, by virtue of their general jurisdiction over the estates of minors and others under disability, to authorize a change from real to personal and from personal to real." (*Hale* v. *Hale,* 146 Ill. 227; *Williams* v. *Williams,* 204 id. 44; *King* v. *King,* 215 id. 100.) In the recent case of *Roberts* v. *Roberts,* 259 Ill. 115, this court discussed the question of the power of a guardian or trustee to convert an infant's personalty into real estate, or *vice versa,* and said (p. 123): "Courts of equity have the unquestioned power to change the character of property belonging to infants, and this jurisdiction is not infrequently exercised. When it is manifestly to the advantage of the infants, courts of chancery do not hesitate to grant trustees and guardians leave to change the character of the property of their beneficiaries."

The statute in this State did not give the county or probate court jurisdiction or authority to direct or empower the guardian to invest funds not derived from the sale of real estate in other real estate. Neither had either of those courts equity jurisdiction authorizing them to ratify or confirm such an investment by the guardian. The fact that plaintiffs in error have made an ineffectual attempt to de-

fend in the action for an accounting under the·statute will not prevent them from seeking equitable relief in chancery. The judgment in the statutory proceedings is not *res judicata* and conclusive upon plaintiffs in error, as erroneously held by the Appellate Court in this proceeding. The chancellor, in the trial of this cause, held that under the facts shown it was greatly to the interest of the minors that the 168-acre tract of land should be retained by them, and that it would be inequitable to execute the judgment entered in the probate court under the mandate of the Appellate Court. The record before us justifies that finding.

The judgment of the Appellate Court will be reversed and the decree of the circuit court will be affirmed.

*Judgment reversed.*