In re Estate of Minnie E. Feldman, Deceased. Gertrude VanZele, Executrix of Will of Leon VanZele, Deceased, Appellant, v. Jay J. Smaltz, Executor of Will of Minnie E. Feldman, Deceased, Appellee.

Gen. No. 9,882.

Opinion filed August 19, 1943.   Rehearing denied October 5, 1943.

JOSEPH L. SHAW, of Geneseo, and JOHN H. ARMSTRONG, of Ottawa, for appellant.

J. J. LUDENS, of Sterling, and JOHN A. FLETCHER, of Morrison, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

On March 1, 1931, Minnie E. Feldman executed her promissory note for $3,000 payable to James C. Feldman. The note with indorsements is in substance as follows: "Morrison, Ill., March 1st, 1931. On or before date we jointly and severally promise to pay

James C. Feldman, or order, the sum of $3000.00 Three Thousand & 00/100 DOLLARS, with interest at the rate of 5 per cent, per annum from date until paid, payable annually. Value received. Both principal and interest payable at the Smith Trust & Savings Bank, Morrison, Illinois.

(Regular judgment note clause, etc.)

Due Mar. 1, 1939.    (Signed)    Minnie E. Feldman.''

The note contains two indorsements. First to Leon VanZele as follows (Abst. 2):

"James C. Feldman
Assigned to
Leon VanZele."

And second to Hazel Feldman as follows (Abst. 2):

''I hereby assign the within note to Hazel Feldman, subject, however, to the interest and right therein of Leon VanZele, who now holds the said note as collateral security for a debt due him from Hazel Feldman. The within note is now in the possession of said Leon VanZele, who has permitted me to make this endorsement. When Hazel Feldman has paid her note to said Leon VanZele he is to surrender the within note to her.

(Signed) James C. Feldman"

Minnie E. Feldman died February 20, 1941, and Jay J. Smaltz was appointed executor of her estate. Leon VanZele died December 26, 1933, and Gertrude Van-Zele was appointed executrix of his estate. On June 20, 1941, Gertrude VanZele, as such executrix, filed the above note as a claim against the estate of Minnie E. Feldman, deceased. The executor of the estate of Minnie Feldman filed objections to the claim. The case was heard in the county court of Whiteside county and the claim was disallowed. An appeal was perfected to the circuit court of said county and a hearing had before said court. The claim was again

disallowed. It is from this order that an appeal has been perfected to this court.

It will be observed from an examination of the note that it is dated March 1, 1931, and then follows: "On or before date" we jointly and severally promise to pay, etc. In the lower left-hand corner of the note are the words and figures "Due Mar. 1, 1939."

The question now arises, what is the real due date, of this note? If the words, "Due Mar. 1, 1939," is not considered, we think there is no question that the court properly held that this note was due on the date it was executed, *viz.*, Mar. 1, 1931. The question then arises whether the writing, "Due Mar. 1, 1939," has any bearing on the obligation of Minnie E. Feldman to pay the note. We think it is the universal custom of bankers,—when receiving a note either before or after its execution,—to fill in the due date in the blank space in the left-hand corner, but it is considered no part of the note itself, but merely a convenience for the bankers for reference as to when the note is due and payable.

Our attention has not been called to any case in Illinois in which this question has ever been passed upon, but we find in vol. 8 of Corpus Juris under bills and notes on page 193 the following: "Where the body of the note and a marginal memoranda differs as to the date of maturity, the date in the body of the instrument is controlling." In Corpus Juris Secundum in vol. 10 on page 481, we find the following: "Memoranda which are repugnant to the body of the instrument or self-contradictory do not become part of the instrument and do not control as against its provisions, unless it is shown that such notation on the instrument was made to correct a mistake therein. Thus, where a marginal memorandum differs from the body of the instrument as to the date of maturity, the date in the body of the instrument is controlling."

The Supreme Court of the State of Nebraska in the case of *Fisk v. McNeal,* 23 Neb. 726, 37 N. W. 616 had this same question before it for consideration and in their opinion the court used this language: ''The question presented for decision is, does the filling of the blank in the lower margin of the notes, naming a date for their maturity, make the notes payable on such dates, instead of the date named in the body of the note? The testimony shows that, at the time of and prior to the execution of the notes, defendant resided in Franklin Grove, in the State of Illinois, and was indebted to plaintiff in the sum of $105. Plaintiff demanded payment, but was informed by letter from defendant, dated June 25, 1878, that she could not make the payment at that time, but would be able to do so the coming fall—by the middle or last of September. She was then requested to execute her notes for the amount due, and send them to plaintiff, which she did; the notes being the ones sued on in this case. It may be assumed, also, that the notes were written by her in the form in which they now appear, and it may be that she intended to make them payable at the time designated in the margin. It may also be assumed that plaintiff so treated them as a favor to defendant, and so relied upon them. But while this is a matter which, if true, should appeal strongly to the conscience of a debtor, we, not being the conscience keepers of litigants, must decide the case according to the law as we find it applicable to the contract which the parties have made. As may be seen by the notes, they fix a definite time within which they mature,—''ten days after date.'' It cannot be said, as matter of law, that the marginal note or memorandum could any more control the body of the note than could the marginal figures, when different from the amount expressed in the body, or written portion of the note, control the amount which a holder would be entitled to upon payment or judgment. Upon this point, we

think the American cases are substantially uniform, that, where a difference appears between the words and figures, evidence cannot be received to explain it; but the words in the body of the paper must control. 1 Daniel, Neg. Inst., par. 86, and cases there cited. Hence, if an alteration is made in the marginal figures, so as to make them correspond with the writing, it is not such an alteration as to vitiate the note. In *Smith v. Smith*, 1 R. I. 398, the court said: "We do not think the marginal notation constitutes any part of the bill. It is simply a memorandum or abridgement of the contents of the bill for the convenience of reference. The contract is perfect without it. If this is so, any alteration in the figures cannot avoid the contract, because it is no alteration, either material or immaterial, in the contract." See, also, Rand. Com. Paper, par. 105. So we think it must be in this case. The marginal memorandum is only for convenience in the matter of ascertaining the date of the maturity of the note, without the necessity of reading it.

In the case of *Danforth v. Sterman*, 165 Iowa 323, 145 N. W. 485, the Supreme Court of Iowa also had this question before it. By its terms, the note in the suit was due June 1, 1911, and was assigned to the plaintiff on May 18th of that year. In the lower left-hand corner of the note, and in the margin, after the printed word "due," was written the word and figures "May 15, 1911," making the sentence read, "Due May 15, 1911," which, if correct, was before the transfer of the note. Defendant insisted that this memorandum became a part of the note and was controlling as to its maturity, and that the court erred in instructing the jury that the instrument matured June 1, 1911. The court held that upon the record, it was clear that the memoranda date of May 15, 1911, did not control or affect the terms of the note itself, and the court properly instructed the jury that the note was due June 1, 1911, as written in the body of the note. To

the same effect is the case of *Sharpe v. National Bank of Commerce* decided by the Court of Appeals of Texas, reported in vol. 272 Southwestern 321, at page 327.

In the case of the *Union State Bank of Minneapolis, Minnesota v. Benson,* 38 N. D. 396, 165 N. W. 509, the Supreme Court of North Dakota held that the date, as written in the body of the note, was the due date of the note and a marginal reference of a different date had no bearing upon the due date of the note, and was no part of it, but merely for the convenience of the holder of the note. In the case of *Rivet & Sons v. Durand,* 53 R. I. 48, 163 Atl. 476 (Supreme Court of Rhode Island) the court held that where the marginal notation, which does not purport to be a collateral agreement, but only a restatement of the amount, or date of the note is in conflict with the terms in the main body thereof, it will be disregarded as not being a part of the note.

It is our conclusion that in the present case the words "Due March 1, 1939," was no part of the note and did not control in any way, the due date thereof.

The record shows that Minnie E. Feldman continued to reside in the county where the note was executed, until her death and no demand was made upon her for payment of the note. The court held that the holder of the note had slept on his rights, until such time as the note would have been barred within a few days by the statute of limitations. A few days before the statutory 10-year period of limitations expired, Minnie E. Feldman died, which automatically gave the holder of the note an extension of time in which to present his claim in the probate court. The court held the claim was stale and disallowed the same.

The record shows that James C. Feldman was in 1933 declared a bankrupt, and that Minnie E. Feldman filed a claim against the bankrupt estate for several thousand dollars; that the referee in bankruptcy

in adjudicating the accounts between the bankrupt and Minnie Feldman charged her with the amount of this note and deducted the amount due on the note from the amount due from bankrupt estate to her. This note was presented to the bankruptcy court by the assignee, Leon VanZele, and the note was filed as an exhibit in the case. Leon VanZele had knowledge of the bankruptcy proceedings, and the referee's findings and while he was not a party to the suit, he made no effort from the time he procured the note, to enforce the payment of it. Our Supreme Court in the case of *Chapman v. American Surety Co.*, 261 Ill. 594 states: "That this court has frequently stated that the probate court has a sort of equitable jurisdiction over claims, presented to it for allowance. In the allowance of claims against an estate, the county court may adopt the forms of proceedings in equity. It possesses a similar jurisdiction and may adopt a similar mode of procedure in the adjustment of guardians' accounts. . . . It lies in the nature of these courts that in the exercise of their jurisdiction they are not confined to legal principles or the rules of common law courts, but exercise equitable powers as well. Whenever, within the scope of their statutory jurisdiction, the relief to be administered, the right to be enforced or the defense of an action properly pending before them involves the application of equitable principles, their powers are commensurate with the duties demanding their exercise, whether legal or equitable."

After considering all the evidence in the case, it is our conclusion that the trial court properly held that the claimant was not entitled to recover on this claim, and that the claim had become stale and the owner of the note was guilty of laches in not attempting to collect it before the death of Minnie Feldman.

The judgment of the trial court is affirmed.

*Judgment affirmed.*