Martin Redmer, Trustee under Last Will and Testament of Norman W. Redmer, Deceased, Appellant, v. Hugo J. Hakala, Administrator with Will Annexed of Estate of Norman W. Redmer, Deceased, Appellee.

Joseph Behr and Sons, Inc., Petitioner for Rehearing.

Gen. No. 10,418.

Opinion filed October 20, 1950. Rehearing granted February 8, 1951. Additional opinion filed July 12, 1951. Released for publication August 1, 1951.

WAYNE WILSON and THEODORE L. ANDERSON, both of Sycamore, for appellant.

HAROLD W. WYNKOOP, P. J. CRONIN, both of Chicago, and DeESTIN L. PASLEY, of DeKalb, for appellee; FAY WARREN JOHNSON, of Chicago, of counsel.

LATHROP, BROWN & CONNOLLY, of Rockford, and FAY WARREN JOHNSON, of Chicago, attorneys for petitioner; DAVID CONNOLLY, of Rockford, and FAY WARREN JOHNSON, of Chicago, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Plaintiff, Martin Redmer, trustee under the will of his deceased brother, Norman W. Redmer, filed a complaint in the circuit court of DeKalb county against defendant, Hugo J. Hakala, administrator with the will annexed of the estate of Norman W. Redmer, and others, in which plaintiff sought a temporary injunction restraining the sale and resale of the major assets of the estate, a construction of the will, and a determination of the trust therein established, the appointment of a suitable trustee to administer the trust, and the completion of the administration of the estate in the circuit court. The circuit court, on motion of defendant Hakala, dismissed the complaint, prior to the return date of summons for some of the defendants, after determining only that the circuit court would not complete the administration of the estate, and plaintiff has appealed therefrom.

The fundamental issue presented herein is whether plaintiff's complaint established a right to the relief requested, or any part thereof.

In ascertaining whether plaintiff was entitled to injunctive or other relief, it is incumbent upon this court to closely examine the uncontroverted sequence of events set forth in plaintiff's verified complaint, and determine the legality and propriety of the administration of the estate of Norman W. Redmer by the defendant Hakala and the county court.

27

The testator, Norman W. Redmer, died on August 25, 1948, and his brother, Martin Redmer, the plaintiff herein, as one of the executors named in the will, submitted the will to probate on September 3, 1948. On September 10, Martin Redmer petitioned the county court for letters of administration to collect, since there would be some delay before the admission of the will to probate. The county court ordered such letters to issue after Martin Redmer filed a bond for $2,000, and on October 11, 1948, the will of Norman W. Redmer was admitted to probate.

Under the terms of the will, the testator appointed the Pioneer Trust & Savings Bank, his brother, Martin Redmer, and sister, Wilhelmina Redmer, as executors and trustees, and directed that none of them shall be required to give any bond or other security. In the event of the death or inability of a named executor or trustee to act, it was provided that the testator's brother, Fred, shall become a successor, and no bond shall be required of him. No other successors shall be appointed on any subsequent vacancy.

On October 11, the Pioneer Trust & Savings Bank filed its written renunciation as one of the executors. The county court thereupon entered an order appointing Martin and Wilhelmina Redmer as executors of the will, and directing that letters testamentary be issued to them on condition that they file a bond in the sum of $40,000, with sureties to be approved by the court to secure the faithful performance of their duties as executors, notwithstanding the fact that the will excused them from giving any security. That same day Martin and Wilhelmina Redmer filed their oaths as executors, but thereafter Wilhelmina Redmer filed her written renunciation of the appointment in the county court. Martin Redmer, however, remained willing and able to act, although he did not immediately file the bond.

28

On November 1, 1948, some two and one-half weeks later, in a proceeding without a hearing or notice, or even a petition filed therefor, the county court entered an order, of which none of the interested parties were apprised, reciting that each and every person or corporation named in the will as executor has failed to qualify and refused to act, and appointing Hugo J. Hakala as administrator with the will annexed of the estate of Norman W. Redmer. Defendant Hakala immediately filed his oath, and on the following day he filed his bond and letters of administration were issued to him.

On February 3, 1949, Martin Redmer endeavored to have his bond, as executor of the will of his deceased brother, approved, but the county court found that certain interested parties were not present, and ordered that notice be given, and the matter set for hearing. At this hearing on February 15, the county court disapproved Martin Redmer's bond, and denied his appointment as executor for the alleged reason that he had heretofore refused the appointment. It is undisputed, however, that Martin Redmer at no time filed any written renunciation of his appointment as executor and trustee under his deceased brother's will, or intimated such an intention to the court.

An attempted appeal from this order of the county court was dismissed without a hearing on the merits on the ground that the court costs had not been paid.

To comprehend the significance of the subsequent events and the extent to which the defendant Hakala disregarded and deviated from the testator's expressed intentions, reference should be made to the unambiguous provisions of the will.

The will bequeathed all of the testator's stock in United Precision Products Company, which was his own business, and all of his residuary estate, including his stock in Redmer Building Corporation, to his named trustees for the use and benefit of his minor

29

son, Norman Frank Redmer. It was provided that the trustees shall, commencing at the date of the testator's death, pay half of the net income at convenient intervals not less frequently than quarter-yearly, to the son, and retain the balance in the corpus. Upon the son's reaching 25 years of age, the trustees shall distribute 25 per cent of the trust estate to him, and when he reached 30 he was to receive the balance. Moreover, if other payments of income or corpus were required for the minor, the trustees could themselves expend the sums, or make payments either directly to the minor, or to the legal guardian, or to a surviving relative, to be expended on behalf of the minor.

The testator's intent with reference to United Precision Products Company is clearly manifested in the following provision: ". . . Since I have devoted years and effort to the development of the business now known as United Precision Products Co., which I have provided to be conveyed to my trustees, I suggest that my trustees deal with the property . . . with the idea of continuing and carrying out my policies . . . as well as giving full consideration to the preservation of the business for my son. Any decision to sell the interest in this property should be by unanimous action of my trustees. . . ." The testator provided further, that if after the establishment of the trust, the estate shall be insufficient to pay all the legacies, then the legacies shall be reduced on a pro rata basis, rather than affect the trust property.

Notwithstanding these provisions, no trust has ever been established, nor have any payments of income, or even support, been made to or for the testator's minor son, from the date of defendant Hakala's appointment to the present time. However, within the first four and one-half months of his appointment, defendant Hakala did pay to himself and three different attor-

neys the sum of $7,750 as fees, out of the estate, with the approval of the county court.

On April 12, 1949, Martin Redmer, as trustee under the will, filed a verified petition for the removal of defendant Hakala, alleging that the inventory filed was incomplete in that it failed to include property owned by the decedent at the date of his death, and failed to state the value of the 2,000 shares of common stock of United Precision Products Co., the principal asset of the estate, or the 970 shares of stock of Redmer Building Corporation. It was further alleged that defendant Hakala, without even an authorization by the county court, assumed powers to operate both United Precision Products Co. and Redmer Building Corp., the corporate stock of which was specifically bequeathed to the trustees for the testator's son; that the administrator was wasting the estate to such an extent that it might be rendered insolvent; and that no appraisal of chattel property had ever been made in the county court.

Without reference to these uncontested allegations, the county court not only dismissed Martin Redmer's petition on the alleged theory that he had no interest in the estate, but required him to make an appeal bond in the amount of $40,000, with sureties, as a condition to appealing from the order of the court. Martin Redmer failed to appeal only because of his inability to procure such an appeal bond.

Defendant Hakala proceeded to administer the estate, and failed to file any Illinois inheritance tax return, due 10 months after the testator's death, thereby losing assets of the estate in the amount of accrued interest and penalties imposed for such failure. Similarly, defendant Hakala failed to file on behalf of the estate any United States estate or income tax return, or pay the general taxes for the years 1947 and 1948 on real estate owned by the estate and by

31

United Precision Products Co., in consequence of which default parcels of real estate have been forfeited and sold for unpaid taxes by order of the county court.

In addition to such acts of omission, defendant Hakala, without even the summary approval of the county court, has voted the stock of United Precision Products Co. and the Redmer Building Corp., and elected as directors and officers of these corporations, himself, his wife, and his business partner. Defendant Hakala thereupon endeavored to sell all of the assets and stock in United Precision Products Co., which, as herein before noted, was specifically bequeathed to Martin Redmer in trust for the testator's minor son, to Joseph Behr & Sons, dealers in junk and scrap metal, for a total price of $50,100. This sale, incidentally, is to be effected by defendant Hakala's business partner, who is the broker or agent of the purchaser, and is to receive certain commissions from the Redmer estate for his services.

In his petition for such sale, defendant Hakala represented that such price was a reasonable offer, whereas in his petition for fees, defendant Hakala represented that the estate was worth between $150,000 and $300,000.

The county court promptly approved defendant Hakala's petition for a private sale, at the best price obtainable, of the assets and stock of United Precision Products Co., and the same day approved the sale to Joseph Behr & Sons, without even a reference to any other bids. Both orders were entered in an *ex parte* proceeding, without any notice to any of the parties affected thereby, not even the minor's guardian *ad litem,* or the duly constituted legal guardian of the minor, or the trustees, or the attorneys of record, despite the fact that these orders converted and disposed of the principal assets of the estate. This sale included the machinery, inventories, all manufactured

32

products, patent rights, processes, all books and data pertaining to the manufacture, distribution and costs, good will, name leaseholds and franchises of the business.

Although the order of the court recited that an appraisal and inventory of the personal property had been previously approved, and that such sale was necessary for a proper administration of the estate, there was no finding as to the financial condition of the estate, its debts, legacies or assets, or the order of available assets for the payment of debts and legacies. Nor was there any appraisal, and, at best, an incomplete and vague inventory.

Upon learning of those *ex parte* orders of the county court, Martin Redmer, as trustee under the will, filed the complaint involved herein in the circuit court of DeKalb county, with a motion for a temporary injunction restraining the sale of United Precision Products Co. In fact, the sale of this business, the value of which was reputedly greatly in excess of $50,100, had proceeded so fast that plaintiff, Martin Redmer, had to amend his complaint to restrain the resale of the property by Joseph Behr & Sons, who were scrap metal dealers, to firms actually engaged in the manufacture of tools and dies.

The foregoing, in substance, constitutes the principal allegations of plaintiff's amended complaint in which he sought four distinct types of relief: First, a temporary injunction to restrain Hugo J. Hakala, as president of United Precision Products Co. and Redmer Building Corp. (by his own vote) from taking any further action to sell assets purportedly belonging to either United Precision Products Co. or Redmer Building Corp., to Joseph Behr & Sons, and to restrain Joseph Behr & Sons from selling the assets acquired by it from United Precision Products Co.; secondly, a construction of the will and determination of the

33

validity of the trust provided therein for the benefit of the testator's minor son; thirdly, the appointment of a suitable trustee; and fourthly, the completion of the administration of the estate in the circuit court.

In response to this complaint, defendant Hakala merely filed a motion to dismiss, predicated solely on procedural grounds and matters in abatement. Defendant Hakala asserted that the estate was still under the jurisdiction of the county court; that plaintiff was not a party in interest; that plaintiff's remedy, if any, is in the county court and that he must exhaust his remedy there; and that the matters complained of had been finally adjudicated in the county court.

Although the circuit court concluded that it should not take over the administration from the county court, it did find that the complaint revealed an unusual situation. The circuit court, however, made no reference to plaintiff's first three prayers for relief, but dismissed the entire complaint upon finding that plaintiff was not entitled to the fourth prayer for relief.

Shortly after the proceedings in which the circuit court recognized that the allegations in plaintiff's complaint presented an unusual situation, the county court, on motion of the guardian of the minor son of the testator, vacated the *ex parte* order approving the sale of the testator's business to the scrap metal dealers, defendant Hakala, therefore, now contends that since the county court rectified its order, the whole problem presented by plaintiff's complaint is moot, and that defendant and the county court be permitted to proceed with the administration of the estate.

In determining whether the circuit court erred in dismissing plaintiff's complaint, this court must be guided by certain fundamental canons of equity. Equity will scrutinize with most jealous vigilance transactions of parties occupying a fiduciary position (*Wennerholm v. Wennerholm,* 382 Ill. 254),

34

such as an executor or administrator (*Graham v. Graham,* 85 Ill. App. 460), and has inherent jurisdiction to recognize, execute and control trusts and trust funds. (*Board of Education of City of Rockford v. City of Rockford,* 372 Ill. 442.) Equity will enjoin a breach of trust, and the mismanagement or waste of an estate, irrespective of whether proceedings are pending in the county or probate courts (*Elting v. First Nat. Bank of Biggsville,* 173 Ill. 368; *Chapman v. American Surety Co.,* 261 Ill. 594), and has paramount jurisdiction in matters of administration and settlement of estates, particularly with reference to minors, with power to effect whatever may be necessary to preserve their estates and interests. (*Chapman v. American Surety Co., supra,* at p. 605.)

With reference to plaintiff's right to the temporary injunction, it is readily apparent that the proposed and partially executed sale of the stock and assets of United Precision Products Co. by the defendant Hakala, was contrary to the terms of the decedent's will, and constituted a flagrant breach of a fiduciary duty.

As hereinbefore noted in the recital of the facts, the will unequivocally bequeathed all the assets and stock of United Precision Products Co. to the plaintiff, Martin Redmer, as trustee for the testator's minor son. The expressed intent of the testator was to preserve this business which he had built up in his lifetime, and with which his brother was familiar, for his son. The will provided that the privilege of voting all the corporate stock should belong to the plaintiff, Martin Redmer, his sister, and a corporate trust company, all of whom the testator knew, and stated that only the testator's other brother, Fred Redmer, and "no other" shall become a successor executor or trustee. Moreover, any sale, or disposal, or liquidation of the business had to be by unanimous decision of the testator's trustees.

35

In total disregard of these provisions, and without even the authorization of the county court, defendant Hakala voted the estate's stock in United Precision Products Co. and Redmer Building Corp., so as to elect as directors and officers of both corporations, himself, his wife and business partner. Then, with his business partner acting as broker or agent for the purchaser, defendant endeavored to sell the entire business and assets, which constituted the bulk of the estate, to a junk dealer for less than one-sixth of the sum originally estimated by defendant as the value of the estate, when he sought advance payments of fees. This fractional sum would be reduced further by the payment of commissions earned by the sale of defendant's business partner in the brokerage firm of Hakala and Sanderson.

Equally reprehensible is the fact that there is no showing in the actual findings of the court, or in the petition for the sale, just how or why the sale was necessary in any way for the payment of decedent's debts. The inventory shows that the residue of the estate contains real estate valued at $13,500 besides considerable personal property not specifically bequeathed, all of which must be applied to the debts, if necessary, before recourse to property specifically devised. In fact, the testator specifically provided that the monetary bequests should abate to whatever extent they could not be satisfied, without recourse to the stock and assets of United Precision Products Co. Furthermore, the statutory provision for the sale of assets to pay debts expressly limits such sale to so much of the assets as are required to be sold.

It should be noted further, that the finding of the county court that none of said property, the 2,000 shares of stock in United Precision Products Co., is included in specific legacies and bequests is patent error, for the sale would annihilate the detailed trust

created by the testator for his son. Nor was there ever an appraisal of the goods and chattels belonging to the decedent at the time of his death, as recited by the court, or any showing of the value of the 2,000 shares of stock in the incomplete inventory allegedly approved by the court.

In addition to the foregoing facts revealing the impropriety of this sale, the mode in which it was sanctioned by the county court is also significant. The court, on the same day, approved the petition for a private sale at the best price obtainable, and also the petition for the sale to Joseph Behr & Sons for $50,100, without reference to any other bids. These orders were entered in an *ex parte* proceeding without notice to any of the interested parties of record, notwithstanding the fact that the sale completely destroyed the trust created for the testator's minor son. In fact, the sale had progressed so far before the parties became aware of the court's order that plaintiff, as trustee under the will, had to amend his complaint and make Joseph Behr & Sons a party, in order to prevent the imminent resale of certain assets.

██ Under these circumstances, the circuit court, having jurisdiction of the parties, and of the subject matter, as hereinbefore noted, should properly have enjoined the sale by the defendant Hakala and the resale of those assets already disposed of to Joseph Behr & Sons, inasmuch as the orders of the county court authorizing such sale were not merely reversible error, but would have effected irreparable injury to the testator's minor son by destroying the trust established for his benefit.

On this appeal defendant Hakala devotes considerable attention to the fact that the county court revised its approval of the sale, and contends, therefore, that since this issue is the main concern of plaintiff's complaint, the entire appeal is moot.

■ ■ The comments of the circuit court that the proceedings alleged in plaintiff's complaint were unusual may have prompted the county court, on motion of the minor's guardian, to vacate the order of sale. That modification, however, in no way disposes of this cause. The county court does not have the power or jurisdiction to protect the property already disposed of by defendant Hakala, and enjoin its resale. Therefore, the temporary injunction, as prayed for in plaintiff's amended complaint, is still appropriate, and should have been issued by the circuit court, irrespective of the determination of plaintiff's other prayers for relief.

■ With reference to these remaining prayers for relief, the law is well settled that the circuit court will exercise jurisdiction in the administration of decedent's estates, notwithstanding pending proceedings in the county court, where extraordinary or unusual circumstances are presented. *(Union Trust Co. v. Shoemaker,* 258 Ill. 564; *Elting v. First Nat. Bank of Biggsville, supra; Chapman v. American Surety Co., supra.)*

As hereinbefore noted, defendant Hakala was appointed as administrator with the will annexed by the county court, without any petition for such appointment, and in an *ex parte* proceeding without notice to anyone, either before or after the appointment. This appointment was foisted on the estate on Nov. 1, 1948, after Martin Redmer, the brother of the decedent and the designated executor and trustee under the will, had been issued letters of administration to collect, and had admitted the will to probate, and taken his oath as executor under the will on October 11, 1948. It is uncontroverted that Martin Redmer at no time resigned or filed any renunciation of his appointment or willingness to act as executor and trustee under the will in the county court or elsewhere. There was merely a delay in filing the bond for $40,000 with sureties,

38

which the county court demanded of Martin Redmer even though the will excused him from giving security, and after only two and one-half weeks the court proceeded with the *ex parte* appointment of defendant Hakala.

When Martin Redmer discovered the appointment of a stranger to the will, and endeavored to have his bond approved, the county court, after insisting that interested parties be properly notified, disapproved the bond on the ground that Martin Redmer had refused to act. His attempted appeal from that order was dismissed without any hearing on the merits, on the ground that the court costs had not been paid.

Thereafter, Martin Redmer endeavored to have the defendant Hakala removed as administrator in a petition setting forth a wasting of assets and an unauthorized assumption of power by the administrator. The county court reiterated that Martin Redmer had refused to act, and therefore, had no interest in the estate.

Inasmuch as plaintiff at no time renounced his trusteeship, it is not clear by what novel construction of the will or circumstances the county court concluded that he had no interest. Except for a few bequests of money, which are specifically made subordinate, plaintiff is the trustee of the entire estate for the use and benefit of the minor son of the testator. The will expressly authorized him to pay half of the income of the trust to or for the benefit of the son, and to make expenditures of such funds for the care, support and education of the beneficiary.

The county court had approved, within four and one-half months of defendant Hakala's appointment, fees for defendant Hakala and his three different attorneys amounting to $7,750, which were paid out of the estate.

From the foregoing events, the conclusion is inescapable that plaintiff Martin Redmer has exhausted his remedy in the county court, and any further at-

tempts to seek redress, or a proper administration of the estate of his deceased brother in that court, would be to no avail. Hence, defendant Hakala's pious chant that the county court is the proper forum, and has power to do anything that needs to be done, would appear to be somewhat irrelevant.

It is our judgment, therefore, on the basis of the foregoing analysis, that the circumstances of defendant Hakala's appointment; the conduct of his administration of, the estate and his complete disregard of the terms of the will, the interest of the testator's minor son, and the rights of the trustee; constitutes ample justification for the prompt completion of the administration of this estate in the circuit court, with the appointment of a suitable trustee, in accordance with the testator's expressed intention, and the establishment of the trust. The order of the circuit court dismissing plaintiff's complaint was, therefore, in error, and the cause should properly be reversed and remanded with directions to proceed in accordance with the views expressed herein.

*Judgment reversed and remanded with directions.*