Mathias B. Beeker, Appellant, v. Charles S. Bird et al., Appellees.

Gen. No. 33,269.

Opinion filed November 6, 1929.

Leo L. Weil and C. W. Middlekauff, for appellant; Altheimer & Mayer, of counsel.

FISCHER, BOYDEN, KALES & BELL, for appellees.

MR. JUSTICE RYNER delivered the opinion of the court.

The sole question presented by this appeal is whether the superior court of Cook county committed reversible error in sustaining the general and special demurrer of the defendants Bird & Son, Inc. and Ernest Reckitt to the complainant's second amended bill of complaint filed July 3, 1928, and in dismissing the bill, for failure of the complainant to bring before the court necessary parties.

The bill is not abstracted. It is set out in *haec verba* and, with the attached exhibits, occupies 45 pages of the abstract. It alleges, in substance, that for a number of years the complainant has been engaged in the City of Chicago in the manufacture, sale and application of design asphalt roll roofing, and the manufacture for use and sale of machinery for the manufacture of such roofing; that he is president and managing director of the Elaborated Ready Roofing Company, an Illinois corporation engaged in the same business and that all of the stock in the company is held by the complainant and members of his family; that Charles S. Bird, now deceased, was engaged in like business at East Walpole, Massachusetts; that Bird & Son, Inc., a Massachusetts corporation, is the largest manufacturer of design asphalt roll roofing in the United States and that the majority of its stock is owned by the estate of Charles S. Bird and members of his family.

It is further alleged that there had been protracted litigation, concerning certain patents, in which Charles S. Bird was the plaintiff and the complainant and the Elaborated Ready Roofing Company were the defendants, and that, for the purpose of adjusting their differences, the parties, on May 14, 1919, entered into

a written agreement, a copy of which is attached to the bill as Exhibit "B." This document reads as follows:

"EXHIBIT 'B.'

AGREEMENT.

"This contract executed the 14th day of May, 1919, between Charles S. Bird, of E. Walpole, Mass., party of the first part, and Mathias B. Becker of Chicago, Ill., and Elaborated Ready Roofing Company, an Illinois corporation, having its regular place of business at Chicago, witnesseth that—

"Whereas, said Bird is the owner of United States patents Nos. 1,036,427 dated August 20th, 1912 and 1,181,827, dated May 2nd, 1916 for design roofing and

"Whereas, said Bird brought suit on said patents in the U. S. District Court for the Western District of New York against said parties of the second part and Elaborated Roofing Company of Buffalo, N. Y., in which suit it was held that said patents were valid and said patent 1,181,827 infringed by the defendants, an injunction having now issued in said case and an accounting being now in progress; and

"Whereas, the parties desire to terminate said litigation and

"Whereas, said Becker is the owner of United States patents 1,024,549, dated April 30th, 1912; 1,024,550 dated April 30th, 1912; 1,157,664, dated October 26th, 1915; 1,157,665 dated October 26th, 1915; 1,174,960 dated March 14th, 1916, and 1,222,594 dated April 17th, 1917, all relating to designed roofing products, apparatus or processes.

"Now Therefore, in consideration of the premises and of $1.00, and other valuable considerations by each party to the other in hand paid, receipt whereof is hereby acknowledged, the parties mutually covenant and agree as follows:

"1. Said Becker will convey forthwith to said Bird, all of said patents and patent rights now owned by him and all other patents or applications for patent, of the United States or Canada relating to design roofing products, machinery or apparatus now owned by said Becker, together with all claims and rights of action for past infringement thereof.

"2. Upon the execution and delivery of such assignment said Bird and said Elaborated Ready Roofing Company will execute a license agreement in the form hereto annexed and marked Exhibit A, and a final decree shall be entered in said suit conforming to the terms of the interlocutory decree now on file, but providing for the payment of no damages, profits or costs, and the bond now on file in said case shall be cancelled.

"3. The royalties paid to said Bird by said Elaborated Ready Roofing Company under said license, and all royalties which may in future be received by said Bird for licenses for future use of said Bird and Becker patents, or any of them shall constitute a royalty fund, to be disposed of as follows: Out of said royalty fund there shall first be paid any expenses involved in connection with the grant or enforcement of said licenses and any expenses of litigation on said patents or any of them; From said royalty fund there shall also be paid any sum or sums, whether they are of royalty payments or purchase price which Bird may pay to any other person or persons in order to acquire patents or licenses under patents in order to strengthen the patent situation to which this agreement relates or to settle claims for infringement connected with said patent situation. If such patents are acquired and royalties collected thereunder such royalties shall be added to the royalty fund. Subject to said deductions said royalty fund shall be divided between said Bird and said Becker in the ratio of 66⅔% to Bird and 33⅓% to said Becker. Said Bird agrees to consult

with said Becker prior to making agreements for royalty payments to others, purchase of other patents or licenses, or other steps taken pursuant to this clause.

"4. Said Bird shall keep accurate records of all receipts and disbursements of said royalty fund, which records shall at all times be open to inspection by said Becker or his duly accredited representatives and quarterly statements thereof shall be rendered by said Bird, with payment of balances due on the tenth day of January, April, July and October of each year.

"5. The sum of $3,166.30 now due to said Becker from certain licensees under said Becker patents (Amalgamated Roofing Co., Patent Vulcanite Co., and McHenry Millhouse Co.), or such other sums as may be now due from said licensees, shall be paid over to said Bird.

"6. Before any share in said royalty fund shall be payable to said Becker, the sum of $35,000, shall first be paid out of said fund to said Bird.

"7. Said Becker will supply to Bird & Son, Inc., a machine of the kind now in use by said Becker for printing roofing, free of charge. Bird & Son, Inc., shall not be required to pay any royalties on account of the use of said patents or any of them unless said Bird & Son, Inc. shall use the machinery of said Becker. Said Bird & Son, Inc., shall have a six months period to try said machine and during said period shall pay royalty of fifteen cents per square into said royalty fund on all design roofing manufactured on said machine, or on similar machines which may hereafter be acquired by said Bird & Son, Inc. and at the termination of said period should said Bird & Son, Inc., use said Becker machine or similar machines, said Bird & Son, Inc. shall pay a royalty of 15 cents a square on all design roofing of any character manufactured by said Bird & Son, Inc. into said royalty fund.

"8. Any future inventions relating to design roofing processes and machines or products which may be made by said Becker or said Bird shall fall within the scope of this agreement, such inventions, if made by Becker to be assigned to said Bird, and all future patents or rights purchased from royalty funds from others or obtained by either of the parties, involving design roofing processes, machinery or products; and the expenses of patent applications on any such inventions to be paid out of the royalty fund. Any such invention made by either party shall be promptly communicated to the other party.

"9. Said Becker and said Elaborated Ready Roofing Co. hereby guarantee that said Bird shall receive out of said royalty fund at least $20,000 (less any sums which Bird may receive under Article 5 hereof) within two years from the date hereof and agrees to pay any additional sum necessary to make up that amount two years from the date hereof.

"10. Said Becker shall have the exclusive right to manufacture and sell machines for printing roofing under his machines patents above enumerated, said machines to be sold only to persons or corporations who may be licensed under said Bird and Becker patents, and to be sold at a uniform price to all licensees, in no case to exceed $1,500 for a single machine, and $2,000, on a double machine. If said Becker shall not wish or shall not be able to supply such licensees with such machines as they may require, such licensees shall have the right to procure them elsewhere.

"11. In the event of a termination of the license agreement to be executed under Article 2 hereof for breach of covenant by said Bird, all patents and inventions which shall have been assigned to said Bird by said Becker shall thereupon be reassigned to said Becker.

"12. Upon the carrying out of clause 1 and 2 hereof, said Bird will release said Becker, said Elaborated

Ready Roofing Co., said Elaborated Roofing Co., of Buffalo, said Patent Vulcanite Company, said Amalgamated Roofing Company, said McHenry Millhouse Company and all their customers from any liability for infringement prior to the date hereof of said Bird patents on account of the manufacture, use or sale of roofing manufactured and sold by said companies or any of them.

"13. Any disputes arising between the parties hereto shall be submitted to arbitration by three arbitrators, one to be selected by the party of the first part, one by the party of the second part and the third by these two. The award of a majority of the three arbitrators shall be final.

"14. This agreement shall be binding upon and shall enure to the benefit of the parties, their legal representatives and assigns.

"In witness whereof the parties have hereunto subscribed this instrument on the date first above written.

    (Signed)    Charles S. Bird

                By Philip R. Allen, Atty.

    (Signed)    Mathias B. Becker

                Elaborated Ready Roofing Co.

                By M. B. Becker, Pres."

The bill then alleges performance on the part of the complainant and that Bird proceeded, under the provisions of the contract to execute licenses to various parties to manufacture roofing under the patents mentioned in the agreement. The names of the licensees are given but they do not include Bird & Son, Inc. In fact it is admitted in the bill that the complainant does not know whether this company ever executed a royalty agreement or ever agreed to pay any royalties to Charles S. Bird.

Charles S. Bird died, a resident of East Walpole, Massachusetts, on October 9, 1927. He left a will which was admitted to probate in the probate court of Norfolk county, in the State of Massachusetts. Pursuant

to the nomination contained in the will, that court appointed three persons as executors and trustees. They are designated as parties to the bill but in the prayer the complainant says that he asks no relief against them "unless and until they shall enter their appearance in this court and submit themselves to" its jurisdiction. This they did not do. Bird & Son, Inc. entered its appearance and demurred to the second amended bill of complaint. Charles S. Bird was never served with process and his appearance was at no time entered in the cause.

There are many charges made in the bill of fraud on the part of Bird and Bird & Son, Inc. and of a conspiracy between them to injure the complainant but they are mere conclusions of the pleader and without supporting facts. The only facts set forth, designed to establish a liability of the corporation, Bird & Son, Inc. are that "Commencing May 14, 1919, the said Bird & Son, Inc., conspiring with Charles S. Bird, to defraud your orator, without the knowledge of your orator, have performed all acts in reference to the administration of the agreement known as Exhibit 'B.' The executives, bookkeepers, cashiers and employees of Bird & Son, Inc., have taken care of all the correspondence with Elaborated Ready Roofing Co., and the other licensees, have made out all of the reports of monies received and monies paid out of said license fund created by the contract known as Exhibit 'B,' and during all of that time the salary and wages paid the said executives, bookkeepers, cashiers and employees of Bird & Son, Inc., have been paid out of the funds of Bird & Son, Inc. The above described employees of Bird & Son, Inc., employed auditors who examined and audited the books of account of Elaborated Ready Roofing Co., and the other licensees annually at the expense of the royalty fund provided for in Exhibit 'B.' Said auditors, as employees of Bird & Son, Inc., obtained from Elaborated Ready Roofing

Co., and the other licensees the names and addresses of the customers and purchasers of design asphalt roll roofing, and the amount of design asphalt roll roofing purchased by each customer. Ever since May 14, 1919, being the date that the contract Exhibit 'B' was executed, the defendant Charles S. Bird has signed no checks, no letters, no reports, conducted no negotiations with licensees, but has intrusted the executive management of the administration of the royalties and trust funds created by said contract Exhibit 'B' to an attorney in fact, Philip R. Allen, and during all of that time, from May 14, 1919, up to the date of the filing of this Bill the said Philip R. Allen has at the same time been the General Manager and General Superintendent and has had the entire executive management of the affairs of Bird & Son, Inc.''; and that: ''Charles S. Bird as owner of the controlling interest in the corporation known as Bird & Son, Inc., conspiring as an officer of Bird & Son, Inc., and for the purpose of defrauding your orator ever since the signing of the contract known as Exhibit 'B' has permitted Bird & Son, Inc., to sell said design asphalt roll roofing at the same price as all the licensees under the agreement known as Exhibit 'A,' and that the 15 cent royalty due under the contract known as Exhibit 'B' was not paid over by Bird & Son, Inc., to Charles S. Bird as trustee as provided by the terms of the contract known as Exhibit 'B,' and the said Bird & Son, Inc., have ever since May 14, 1919, retained and still retain the 15 cent per square that is due to Charles S. Bird as trustee and to your orator under the terms of the agreement known as Exhibit 'B' ''; and further that: ''In compliance with the said Section 7 of Exhibit 'B' above quoted and pursuant to express orders received from Bird & Son, Inc., following the provisions in the contract Exhibit 'B,' your orator manufactured two machines of the kind which were in use May 14, 1919, by your orator for the printing of roofing; that the

said Bird & Son, Inc., having knowledge of Exhibit 'B,' ordered certain alterations to be made in said machines and ordered said machines to be delivered, one to the Canadian plant of the said Bird & Son, Inc., and the other to the East Walpole, Massachusetts, plant. In compliance with said orders your orator loaded said machines on freight cars and prepared to deliver same to said Bird & Son, Inc., free of charge, but the said Bird & Son, Inc., conspiring by its officers with said Charles S. Bird to defraud your orator and escape the payment of royalties, refused to accept said machines so manufactured and constructed by your orator but immediately proceeded to manufacture and construct machines similar to the kind that was in use by your orator on May 14, 1919, for the printing or roofing; and the said Bird & Son, Inc., have purchased machines similar to the machines manufactured by your orator and have manufactured design asphalt roll roofing on said machines ever since May 14, 1919, and have not paid fifteen cents ($0.15) a square on all design roofing manufactured by Bird S Son, Inc., to Charles S. Bird; and said Charles S. Bird, conspiring as aforesaid, has not demanded of Bird & Son, Inc., nor have his executors, that it pay royalty in said royalty fund and said Charles S. Bird, nor his executors have made no effort to collect any royalties from Bird & Son, Inc., although often requested by your orator so to do. Said Bird & Son, Inc., under the terms of Exhibit 'B' are indebted to said royalty fund in a sum in excess of four hundred thousand dollars ($400,000).''

The bill might be sufficient to require an accounting from Charles S. Bird if he were alive and served with process. All of the complainant's dealings were with him and he was the one who personally obligated himself to perform the contract of May 14, 1919. But Bird & Son, Inc. did not sign that or any other agreement so far as the bill discloses. There is no allegation

that the company ever agreed to be bound by any contract executed by Bird or that it did any act which would directly obligate itself to the complainant. The fact that Bird and his family owned a majority of the stock of the company is of no significance because there is no charge that the corporation was not legally organized or that it was used as a cloak for fraud. Likewise no liability on the part of the corporation was created because Bird saw fit to enlist the services of its officers and employees in the matter of correspondence, the auditing of books, and the performance of other administrative acts in connection with the contract.

Even if Bird & Son, Inc. incurred any obligation to pay royalties by virtue of having ordered from Becker, machines which it did not use, but used machines of similar design, it became indebted, not to the complainant, but to Charles S. Bird. In fact this is the position taken by the complainant. The bill contains numerous charges against Bird and his executors of dereliction of duty on their part to collect, or attempt to collect, from the corporation, royalties due Bird in his lifetime and, after his death, to his estate.

It is exceedingly doubtful whether the complainant would be entitled to any relief against Bird & Son, Inc. even if all necessary parties were before the court. It is clear that all of the transactions of the complainant were had with Bird as an individual, and that he in his lifetime, and now his estate, are the parties bound to account to the complainant if the allegations of the bill be well founded.

It is well settled that the trial court could not acquire jurisdiction to enter a valid decree against the representatives of the estate of Charles S. Bird. *Elting v. First Nat. Bank of Biggsville,* 173 Ill. 368. That being so, Bird & Son, Inc. should not be required to account to the complainant and then be subjected to

the hazard of a second accounting to the representatives of the estate of Bird.

For the foregoing reasons, the decree of the superior court of Cook county, dismissing the second amended bill of complaint, is affirmed.

*Affirmed.*

WILSON, P. J., and HOLDOM, J., concur.